778 F.2d 1258
 23 ERC 1777, 16 Envtl. L. Rep. 20,169
 BRANT CONSTRUCTION COMPANY, INC., an Indiana Domestic
Corporation, Plaintiff-Appellee,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (EPA), Irene
Little, Regional MBE Officer, and Valdas V.
Adamkus, Regional Administrator, EPA,
Defendants-Appellants.
 No. 84-2378.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 27, 1985.
Decided Dec. 5, 1985.
 
 Margaret E. Clark, Asst. U.S. Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants.
 Stephen M. Maish, Griffith, Ind., for plaintiff-appellee.
 Before ESCHBACH and FLAUM, Circuit Judges, and DOYLE, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 The question presented by this appeal is whether unsolicited letters received by the United States Environmental Protection Agency ("EPA") that contained allegations of illegal and improper activities in connection with a construction project funded by the EPA are exempt from disclosure under exemption 7(D) of the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. Sec. 552(b)(7)(D). The district court concluded that the letters were not exempt. For the reasons stated below, we will reverse.
 
 
 2
 * On July 29, 1981, the plaintiff Brant Construction Company ("Brant") entered into a contract with the town of Schererville, Indiana, for the construction of a "Flow Equalization" facility. The Schererville project was funded in part by a grant from the EPA under Title II of the Clean Water Act ("CWA"), codified at 33 U.S.C. Secs. 1281-1299. The CWA provides federal funding for up to 75% of the costs of constructing publicly owned sewage-treatment plants. A grantee that accepts EPA funding for these projects agrees to comply with certain procurement rules, including a requirement that a specified percentage of the costs be paid to minority business enterprises ("MBEs"). A portion of Brant's work on the project was subcontracted to Jeffries Demolition & Excavating, Inc. ("Jeffries Demolition"), a minority firm. The EPA routinely monitors compliance with the MBE requirement, and the agency did in fact monitor Brant during the Schererville project.
 
 
 3
 According to the affidavit of the EPA's Irene Little (an MBE officer for the Schererville area), the EPA received three letters from Jeffries Demolition dated May 28, 1981, June 23, 1982, and June 24, 1982. The letters contained allegations of wrongdoing by Brant that led Little to the conclusion that a formal investigation might be necessary. Little stated in her affidavit that she referred all three letters to the proper investigative authorities, i.e., the United States Attorney's Office, the Federal Bureau of Investigation, and the EPA's own Inspector General. The first letter was turned over on June 3, 1981. The district court noted in its order that the record did not indicate the effect (if any) of the EPA investigation on the Schererville project. Government funding was, however, curtailed at some point.
 
 
 4
 On or about July 13, 1982, Brant sent a FOIA request to the EPA, Irene Little, and Valdas Adamkus (the Regional Administrator for the EPA) requesting a copy of all correspondence, memoranda, or other written documents prepared by Jeffries Demolition or the EPA concerning Brant. The defendants received the requests on July 15, 1982, and responded on August 5, 1982. The request was initially denied. On August 9, 1982, Brant appealed the EPA's decision to the agency's FOIA officer. The appeal was denied on February 10, 1983. On August 9, 1982, Brant also initiated this lawsuit under 5 U.S.C. Sec. 552(a)(4)(B).[1]
 
 
 5
 A substantial number of Brant's claims were mooted by the EPA's subsequent release of several documents. After the EPA decided not to pursue its investigation of the Jeffries Demolition allegations, all relevant documents were disclosed, except for the three letters at issue in this appeal. The letters were described in the Little affidavit as follows:
 
 
 6
 A. A four-page narrative letter dated May 28, 1981 from Mrs. Fred Jeffries on behalf of [Jeffries Demolition] to Irene Little, [EPA] containing allegations of solicitation to act as a minority front for a "white firm" in connection with the bidding on the construction of the Indiana Flow Equalization Facility in Schererville, Indiana, a federally funded project subject to EPA's MBE policy.
 
 
 7
 B. A four-page handwritten letter dated June 23, 1982 from [Jeffries Demolition] to Irene Little, [EPA] containing allegations of attempted bid-fixing, solicitation to act as a minority front, embezzlement by suppliers and forgery in connection with the EPA-funded construction grants project in Schererville, Indiana, and another EPA-funded construction grants project in Valparaiso, Indiana.
 
 
 8
 C. A three-page typed letter dated June 24, 1982 from Fred Jeffries, Jr., President [of Jeffries Demolition] to Irene Little, [EPA] essentially repeating the allegations of the letter dated June 23, 1982.
 
 
 9
 In an order dated June 12, 1984, the district court ruled on the parties' motions for summary judgment. The EPA claimed that the letters were exempt from disclosure under exemptions 7(C) (invasion of privacy) and 7(D) (disclosure of confidential information). The court conducted an in camera inspection of the three letters. With reference to the 7(D) claim, the court found that the letters were "investigatory records compiled for law enforcement purposes."
 
 
 10
 Because the identity of the authors of the letters had already been revealed by the EPA, however, the agency could not argue that, because their disclosure would reveal the sources of the information, the letters were exempt. Nonetheless, nondisclosure may be appropriate under 7(D) if the letters were part of a record compiled by a criminal law enforcement authority in the course of a criminal investigation and if they contained confidential information furnished only by a confidential source. The next question addressed by the court was whether the letters came from a "confidential source." The court noted three factors that supported the government's position. First, the items were personal letters specifically directed to persons responsible for monitoring the MBE requirement. Second, the letters were submitted by citizens who were concerned about alleged violations of the law. Although the letters did not expressly seek assurances of confidentiality, one letter did express fear that a member of the author's family might be seriously injured or killed by the parties about whom they were writing. Third, disclosure might deter future communications of this kind.
 
 
 11
 The court stated that "[p]erhaps a request for confidentiality should be inferred." However, the court then appeared to conclude that the first two factors were insufficient to sustain the government's burden of justifying nondisclosure. It noted that the first letter was also sent to Maxine Spencer of the Gary Office of Economic Development Corporation and to Dorothy Dillon of the Indiana Office of Minority Business Enterprise in Indianapolis, Indiana. The text also indicated that the Jeffries had spoken with their attorney about the matter. The letter expressing fear of retaliation was not a decisive factor, according to the district court, because the author did not seek specific assurances of protection and because the fear appeared "to be a flight of fancy on the author's part."
 
 
 12
 The district court, in considering the third factor, i.e., that disclosure would discourage future communications, engaged in a balancing of the policies for and against disclosure and concluded that, under these facts, "[t]here is no reason to conclude that disclosure would discourage such communications." Accordingly, it rejected the government's 7(D) claim.
 
 
 13
 The EPA also argued that letters were exempt under 5 U.S.C. Sec. 552(b)(7)(C), because their disclosure would "constitute an unwarranted invasion of personal privacy." The district court concluded that the legitimate privacy interests of the individuals named in the letters could be adequately protected by modifying the requested disclosure: the names and identifying references were to be excised and the redacted versions of the three letters would be released.
 
 
 14
 Thus, the plaintiff's summary-judgment motion was granted in part and the defendants' summary-judgment motion was denied in part. The EPA was ordered to provide the plaintiff with the redacted copies. However, in its order of June 29, 1984, denying the EPA's motion to stay the original judgment, the district court allowed the EPA to deliver the documents to the court to be held in camera, "to avoid rendering the issues moot prior to any appeal." This appeal followed.
 
 II
 
 15
 The EPA has appealed the district court's ruling that the 7(D) exemption does not apply to the disputed letters.[2] Because the identity of the writers of the letters has already been revealed and because the EPA has not appealed the district court's order that the names and identifying references be excised, the relevant language of 7(D) for the purposes of this decision is as follows:
 
 
 16
 [The disclosure requirement of this] section does not apply to matters that are--
 
 
 17
 ....
 
 
 18
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ...
 
 
 19
 (D) disclose ..., in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, ... confidential information furnished only by the confidential source[.]
 
 
 20
 As a general matter, FOIA prescribes a policy of broad disclosure of government documents to ensure an informed citizenry. Kimberlin v. Department of Treasury, 774 F.2d 204, 206 (7th Cir.1985). Federal agencies are required to release the requested information unless it falls within one of the nine statutory exemptions; in keeping with the general policy of disclosure, these exemptions are narrowly construed. Id.
 
 
 21
 However accurate these generic observations may be, it is also true that Congress and the Executive were especially concerned about the improvident disclosure through FOIA of records compiled in law enforcement investigations.[3] The courts have thus recognized the need to provide a "robust" 7(D) exemption to ensure that agencies are not unduly hampered in their investigations and that their confidential sources are not lost because of retaliation against the sources for past disclosure or because of the sources' fear of future disclosure.[4]
 
 
 22
 Exemption 7(D) differs from other FOIA exemptions, because its applicability depends not on the actual content of the requested document, but rather on whether the information was provided to an agency by a "confidential source" and was part of a record compiled by a criminal-law enforcement authority in the course of a criminal investigation.[5] See Lesar v. United States Department of Justice, 636 F.2d 472, 492 (D.C.Cir.1980). Once it has been determined that the information was procured under the requisite circumstances, all the information is exempt. Id. No judicial "balancing" of the competing interests is permitted; Congress has struck the balance in favor of nondisclosure.[6]
 
 
 23
 We turn now to the question whether the Jeffries were in fact a confidential source within the meaning of exemption 7(D). The agency has the burden of demonstrating that the sources were confidential, and it must show that the information was acquired either under an express assurance of confidentiality or in circumstances where an assurance of confidentiality may be reasonably inferred. Miller v. Bell, 661 F.2d 623 (7th Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); Scherer v. Kelley, 584 F.2d 170, 176 (7th Cir.1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); accord Johnson v. United States Department of Justice, 739 F.2d 1514, 1517-18 (10th Cir.1984); Radowich v. United States Attorney, 658 F.2d 957, 959 (4th Cir.1981); Sands v. Murphy, 633 F.2d 968, 971 (1st Cir.1980); Keeney v. FBI, 630 F.2d 114, 117 (2d Cir.1980); Pope v. United States, 599 F.2d 1383, 1386 (5th Cir.1979). The EPA does not argue that express assurances were given. Thus, we must determine whether such assurances were implicit.
 
 
 24
 The case law is not altogether clear on the quantum of proof required to show confidentiality. See Johnson, 739 F.2d at 1517-18 (discussion of different formulations of level of proof required). Nonetheless, there is authority in the legislative history that the agency need only state to the court that implicit assurances were provided. See Miller, 661 F.2d at 626-27 (discussion of legislative history). This case, however, does not require that we determine the minimum evidentiary threshold. Whatever the quantum of proof required, a distinction should be made in the context of exemption 7(D) between solicited and unsolicited information. When the agency actively solicits information in the course of a criminal investigation--as in an FBI interview--this court has consistently held that, unless there is evidence to the contrary in the record, promises of confidentiality are "inherently implicit." See Kimberlin, 774 F.2d at 208; Miller, 661 F.2d at 627. Although there is no question that unsolicited, as well as solicited, confidential information is protected under 7(D), see Pope, 599 F.2d at 1386, a rule of "inherently confidentiality" does not always apply so neatly to unsolicited communications.
 
 
 25
 It makes little sense to say that unsolicited information was initially supplied pursuant to the agency's implied assurance of confidentiality, unless the agency has somehow put the public on notice that it will accord such treatment to these communications. Nonetheless, formalistic barriers to the protection of confidential sources would defeat the purpose of 7(D), as it is beyond dispute that unsolicited information is vitally important to law enforcement efforts. It is unrealistic to assume that a majority of persons reporting to an agency what they believe to be illegal or improper acts are legally sophisticated. Cf. L & C Marine Transport, Ltd. v. United States, 740 F.2d 919, 924 n. 5 (11th Cir.1984). To the contrary, it is much more likely that they would not know the boundaries of the FOIA exemptions and, therefore, would not include in their initial communication to the agency an express request for confidentiality. They may be frightened, angry, or confused, and their immediate concerns do not include creating an evidentiary record to prove an assurance of confidentiality in anticipation of a potential FOIA request.
 
 
 26
 In cases involving unsolicited information from ostensibly confidential sources, the court should look to all factors, e.g., statements (such as affidavits) from agencies or other relevant parties, the practice of the agencies with reference to confidentiality, and the circumstances of the specific case. It should first be determined whether a request for confidentiality is implicit, i.e., that in light of the information and surrounding circumstances, the communication in all likelihood would not have been made if confidentiality had not been assured. Cf. Pope, 599 F.2d at 1386 (exemption 7(D) applies where courts conclude that sources of information would hardly have made the charges unless they were confident that their identities would remain concealed). The record must then be examined to determine whether the actions of the agency are inconsistent with an implicit assurance of confidentiality.
 
 
 27
 In this case, the district court stated that "[p]erhaps a request for confidentiality should be inferred." We agree completely, but without the reservation expressed by the trial judge. The affidavit of the EPA's Irene Little states that "the Agency affords an implied confidential relationship between itself and the sources of such information." Nothing in the record is inconsistent with this statement. This court has also reviewed the disputed letters in camera. The first communication from the Jeffries was a personal letter describing what the author considered to be criminal activity. In view of the Jeffries's subordinate position as subcontractors on the project and the concern expressed for retaliation, we find unpersuasive at best the argument that the transmission of this information about the project's prime contractor to a federal agency responsible for monitoring compliance with MBE requirements did not carry with it an implicit request for confidentiality. Stated in another manner, it is unlikely that the Jeffries would have made these allegations had they thought the EPA would not keep them in the strictest confidence. Between the receipt of the first and second letters, the EPA informed the Jeffries that the initial letter had been forwarded to the FBI and the United States Attorney's Office and that an investigation would be conducted. In addition, nothing in the record indicates that the agency did not treat the letters confidentially. Thus, we find that the Jeffries were a confidential source.
 
 
 28
 The district court seemed to conclude that certain facts undercut a finding of confidentiality.[7] The court commented on the fact that a copy of the first letter to the EPA was also sent to the Mayor's Office of Economic Development in Gary, Indiana, and to the state Office of Minority Business Enterprise in Indianapolis. These two agencies work on the municipal and state levels, respectively, with the EPA in monitoring the MBE participation. Providing these agencies with the letter is entirely consistent with an implicit request for confidentiality. In addition, nothing in the record indicates that the Jeffries did not consider their submission to be confidential or that these agencies did not treat the letter as confidential. As for the fact that the Jeffries spoke with their attorney about the matter, we are at a loss to understand how this action is in any way inconsistent with an implicit request for confidentiality.
 
 
 29
 The district court did note that one letter expressed a fear of retaliation. Yet, without stating the evidentiary basis for its conclusion, the court dismissed this fear as "a flight of fancy." The question is not whether the fear was well-founded. The statement does, however, bear on the state of mind of the author. The dispositive point is that the letter does express a fear of reprisal, which firmly supports a request for confidentiality.
 
 
 30
 The district court also engaged in a balancing of the competing interests and stated that "[t]here was no reason to conclude that disclosure would discourage such communications." As noted above, judicial balancing of the equities is not an appropriate exercise in considering a 7(D) claim. If the information was provided by a confidential source under the requisite circumstances, the court's inquiry is at an end.[8]
 
 
 31
 We will also consider the argument advanced by Brant that it has not been shown that the letters were part of a record compiled by a "criminal law enforcement authority." The letters were transmitted to the FBI, the United States Attorney's Office, and the EPA's Office of the Inspector General ("OIG"). It is beyond cavil that the first two agencies are "criminal law enforcement authorities." Exemption 7(D) does not state that the agency from whom the records are requested must also be the criminal law enforcement authority that compiles the disputed record. We find this omission significant. If the investigatory and repository agencies must be one and the same, then 7(D) would protect only those records that are initially transmitted to the criminal law enforcement authority conducting the investigation. This would be an unusual result indeed. Cf. FBI v. Abramson, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (information contained in record made for law enforcement purposes does not lose exempt status when incorporated into records for purposes other than law enforcement); Sands, 633 F.2d 968 (FOIA protects "indirect" confidential sources). In addition, the letters were sent to the EPA's OIG, which is required to "report expeditiously to the Attorney General whenever [the OIG] has reasonable grounds to believe that there has been a violation of Federal criminal law." 5 U.S.C.App. 3 Sec. 4(d) (Inspector General Act of 1978). One court has noted the substantial similarities between the activities of the FBI and the OIGs. New England Apple Council v. Donovan, 725 F.2d 139 (1st Cir.1984). Thus, we find that the letters were part of a record compiled by a "criminal law enforcement authority."
 
 III
 
 32
 We have considered the remaining arguments raised by Brant and have found them to be without merit.[9] For the reasons stated above, the district court's order granting Brant's summary-judgment motion in part and denying the EPA's summary-judgment motion in part is REVERSED.
 
 
 
 *
 The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, sitting by designation
 
 
 [1]
 Because the defendants failed to comply with the statutory 10-day period for responding to Brant's request of July 13, administrative remedies were presumed to have been exhausted at the time of the lawsuit. See 5 U.S.C. Sec. 552(a)(6)(A)(i), (C)
 
 
 [2]
 The agency does not seek review of the lower court's ruling on the 7(C) claim
 
 
 [3]
 For a discussion of the legislative history, see Radowich v. United States Attorney, 658 F.2d 957 (4th Cir.1981)
 
 
 [4]
 See Johnson v. United States Department of Justice, 739 F.2d 1514, 1518 (10th Cir.1984) ("[A]bsent a robust 7(D) exemption, law enforcement agencies would be faced with a 'drying up' of their sources of information and their investigative work thereby would be seriously impeded."); Miller v. Bell, 661 F.2d 623, 626-28 (7th Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); Lesar v. United States Department of Justice, 636 F.2d 472, 490 & n. 108 (D.C.Cir.1980); Scherer v. Kelley, 584 F.2d 170, 176 (7th Cir.1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979)
 
 
 [5]
 Similarly, the reference in 7(D) to confidential information does not refer to "secret" information, but rather information given in trust. Kimberlin v. Department of Treasury, 774 F.2d 204, 209 (7th Cir.1985)
 
 
 [6]
 See L & C Marine Transport, Ltd. v. United States, 740 F.2d 919, 925 (11th Cir.1984); New England Apple Council v. Donovan, 725 F.2d 139, 145 (1st Cir.1984); Lame v. United States Department of Justice, 654 F.2d 917, 923 (3d Cir.1981); Lesar v. United States Department of Justice, 636 F.2d 472, 492 (D.C.Cir.1980); Sands v. Murphy, 633 F.2d 968, 971 (1st Cir.1980); Terkel v. Kelly, 599 F.2d 214 (7th Cir.1979), cert. denied, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). But see Nix v. United States, 572 F.2d 998, 1002 (4th Cir.1978)
 Under exemption 7(C), which protects against an "unwarranted" invasion of personal privacy, judicial balancing is appropriate. See Miller v. Bell, 661 F.2d 623, 628-32 (7th Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982).
 
 
 [7]
 Brant asserts that the district court's conclusion that the Jeffries were not a confidential source is a finding of fact to which this court must defer. We express no opinion about the characterization of the finding of confidentiality. Even if it is considered a finding of fact, it is, in the nomenclature of the Federal Rules of Civil Procedure, clearly erroneous
 
 
 [8]
 The district court was apparently influenced by the facts that (1) the investigation of Brant had ended, (2) the summaries of the EPA's affidavit disclosed "the substance of the allegations," and (3) three to four years had passed since the letters were written. We find that reliance on these facts was inappropriate in this case
 First, if the statutory requirements of 7(D) are met, exemption from disclosure is not extinguished with the termination of the investigation. See Lame v. United States Department of Justice, 654 F.2d 917, 922 n. 5 (3d Cir.1981); Pope v. United States, 599 F.2d 1383, 1387 (5th Cir.1979). Second, the subsequent disclosure of the information, either partially or completely, does not affect its exempt status under 7(D). Kimberlin v. Department of Treasury, 774 F.2d 204, 209 (7th Cir.1985). Third, it follows from the discussion above that the passage of time, without more, does not affect the status of the information. Exemption 7(D) sets forth no time limit, and there is no evidence in the record of a waiver of confidentiality from either the Jeffries or the EPA. In this case, several years have elapsed because of the slow pace of federal litigation. In view of the policy of 7(D) to protect future sources of information, we find that the passage of time under these facts does not alter the status of the letters, as the potential for harassment, embarrassment, or other repercussions remains. See Diamond v. FBI, 707 F.2d 75, 76-77 (2d Cir.1983) (7(D) exemption for documents over 15-years old upheld), cert. denied, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); Lamont v. Department of Justice, 475 F.Supp. 761, 778-79 (S.D.N.Y.1979) (7(D) exemption for documents dating from 1942 upheld) (cited with approval in Diamond, 707 F.2d at 77); cf. Lesar v. United States Department of Justice, 636 F.2d 472, 491 (D.C.Cir.1980) (7(D) exemption for documents relating to investigation of assassination of Martin Luther King upheld even though some of the information had "found its way into the public domain").
 
 
 [9]
 Brant requested attorney's fees below. In its order of June 12, 1984, the district court stated that "a decision on Brant's claim at this juncture would be premature." Brant has requested that this court enter "an order finding that Brant has substantially prevailed ... and is entitled to recover its attorney fees and other litigation costs." As far as the record indicates, the district court made no decision on Brant's request for fees and Brant never appealed the ruling of June 12. Thus, Brant has failed to present properly the question of fees in this appeal. We do note, however, that in view of our reversal of the district court's grant of summary judgment to Brant, Brant is not a "prevailing party" with reference to the claims concerning the three letters that are the subject of this appeal. Cf. Estate of Curry v. United States, 706 F.2d 1424, 1433 (7th Cir.1983)