**PROVIDENCE JOURNAL COMPANY and Gerald M. Carbone**

v.

**UNITED STATES DEPARTMENT OF the ARMY.**

**Civ. A. No. 91–0255 P.**

United States District Court, D. Rhode Island.

Dec. 12, 1991.

See also 769 F.Supp. 67.

Joseph V. Cavanagh, Jr., Michael DiBiase, Karen A. Pelczarski, Blish & Cavanagh, Providence, R.I., for plaintiffs.

Stephanie S. Browne, Asst. U.S. Atty., U.S. Atty's Office, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The Providence Journal and one of its reporters brought this action against the United States Department of the Army under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enjoin the withholding of certain records. Both parties have moved for summary judgment. In accordance with this opinion, partial summary judgment is granted to each side. The Army may redact the witness names, ranks, and positions from the Report of Investigation (*Vaughn* index item A); it may also withhold the Directive of Investigation (*Vaughn* index item C) and both Expansions of Investigation (*Vaughn* index items D and E). All other documents, complete and unblemished, must be released to the Providence Journal.

## I

Congress established the Army Inspector General ("IG") in the Office of the Secretary of the Army under 10 U.S.C. § 3014(b)(5). The statute directs the Army Inspector General to "inquire into and report upon the discipline, efficiency, and economy of the Army" 10 U.S.C. § 3020(b); the Army Inspector General also supervises the activities of inspector generals assigned to command posts throughout the Army. Dep't of Army, Reg. No. 20–1, Inspector General Activities & Procedures, ¶ 1–1 (Dec. 15, 1989).

Individual inspector generals perform a variety of functions, including inspections, investigations, and inquiries as directed. *Id.* at ¶ 1–6a(3). An inspector general does not ordinarily conduct criminal investigations. *Id.* at ¶ 8–3b(1). However, the Department of the Army Inspector General does investigate allegations of criminal wrongdoing against general officers and senior Army civilian employees when so directed. *Id.* at ¶ 8–3(i). The Army Inspector General's investigation in this case was a criminal investigation.

In its brief, the Army stresses that IG's are not decisionmakers. "When an IG report is approved, conclusions and recommendations contained in the report do not constitute the directing authority's decision nor an explanation of the decision unless specifically adopted as such in writing by the directing authority." *Id.* at ¶ 3–1c.

The Army Inspector General conducted an investigation into various allegations against certain Rhode Island Army National Guard officials. According to the Army, the investigation was criminal in nature and involved allegations which, if proven, were punishable by court-martial or by the Army pursuant to the Uniform Code of

Military Justice, 10 U.S.C. §§ 801–940. In October 1989 and February 1990, the Providence Journal contacted the Army and requested access to certain documents pertaining to the investigation.

On December 7, 1990, the Inspector General released its report of the investigation to the newspaper. However, the Army redacted major portions of the report, and held back exhibits originally attached to the report. The Providence Journal appealed the Inspector General's refusal to disclose the redacted portions of the report on February 4, 1991. On April 1, 1991, the Army General Counsel denied the Journal access to the withheld information. The Army General Counsel, who has been designated by the Secretary of the Army to consider appeals under the FOIA, is the final decisionmaking body in this area.

■ Having exhausted its administrative remedies under the FOIA, the Journal began this action for declaratory relief. Under the July 19, 1991 Order of this Court, the Army submitted a *Vaughn* index (*See* Appendix A) describing the information withheld and citing the specific exemptions in the FOIA under which the Army justified withholding the information.[1] In addition to reviewing the *Vaughn* index, this Court conducted an in camera review of the disputed materials.[2]

Plaintiffs seek four basic sets of redacted documents: (1) the thirty-three page Report of Investigation; (2) the Louis A. DiManni interview transcript; (3) the Investigative Directive and two Expansions of Investigation; and (4) several anonymous letters. The Army claims that all the items it has withheld fall into four exemption categories: exemption 5, exemption 6, exemption 7(C), and exemption 7(D).[3]

---

1. A *Vaughn* index is a detailed index of each item withheld by the government, the exemptions the government claims for those items, and the reasons why the exemptions apply to those particular items. *Lykins v. United States Dep't of Justice*, 725 F.2d 1455, 1463 (D.C.Cir. 1984), citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

2. Order of the Court, October 30, 1991 ordering Army to furnish documents for in camera review.

3. Since the filing of the Motions for Summary Judgment, the Army has released two groups of the controversial documents. The Army turned over Major General Trudeau's travel vouchers (part of *Vaughn* index item J) and a slightly redacted copy of the transcript of Mr. Louis DiManni's testimony (*Vaughn* index item B).

882

## II

■ In 1966, Congress enacted the Freedom of Information Act, 5 U.S.C. § 552. The FOIA requires the government to provide access to governmental information unnecessarily shielded from the public; it creates a judicially enforceable public right to obtain such information from unwilling officials. *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Congress enacted the FOIA with the purpose of opening government administrative processes to the scrutiny of the press and the public. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 17, 94 S.Ct. 1028, 1037, 39 L.Ed.2d 123 (1974).

■ The FOIA mandates the disclosure of governmental information unless such information falls into one of nine specifically enumerated exemptions. These exemptions are to be narrowly construed, *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988); *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), to carry out FOIA's underlying policy in favor of disclosure of government-held information. *FBI v. Abramson*, 456 U.S. 615, 630–31, 102 S.Ct. 2054, 2063–64, 72 L.Ed.2d 376 (1982). Indeed, the FOIA states that "the burden is on the agency to sustain its action" and show that the information sought may be withheld under a specific exemption. 5 U.S.C. § 552(a)(4)(B). "These exemptions represent 'the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses.'" *New England Apple Council v. Donovan*, 725 F.2d 139, 142 (1st Cir.1984), *citing Mink*, 410 U.S. at 80, 93 S.Ct. at 832. We will examine each set of documents, with the Army's claimed exemptions for each set, separately.

### A. The Report of Investigation

The Report is a thirty-three page document of the results from the Inspector General's investigation. The document summarizes the evidence gathered on each of twelve allegations. The first section of the report provides a synopsis of the investigation's findings and conclusions. The second, longer section details the evidence accumulated during the investigation. The government withheld significant portions of the Report under Exemption 5, Exemption 6, Exemption 7(C), and Exemption 7(D).

#### 1. Suspect Names

■ The Army deleted the names of the suspects throughout the Report based on Exemption 6 and Exemption 7(C). Exemption 6, 5 U.S.C. § 552(b)(6), allows an agency to withhold:

(6) personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy ...

The Army claims that information about the subjects of the investigation can be withheld under this exemption. Classification under Exemption 6 depends upon a balancing test. The right of the public to be informed must be weighed against the privacy interests of the individuals involved. *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). The Supreme Court has held that the term privacy encompasses all interests involving "the individual's control of information concerning his or her person." *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989).[4]

■ The redaction of suspect names under Exemption 6 is erroneous. Exemption 6, though claimed for several portions of the material presently in conflict, is inappropriate for any document with which we are concerned. Exemption 6 provides a FOIA exemption for personal, medical, or "similar files." As the Army points out in its brief, the Supreme Court has interpreted "similar files" quite broadly. *See De-*

---

4. *Reporters Comm.* dealt with Exemption 7(C), but its reasoning applies to the analogous parts of Exemption 6 as well. *See FLRA v. United States Dep't of Treasury*, 884 F.2d 1446, 1451–52 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 948 (1990).

partment of State v. Washington Post Co., 456 U.S. 595, 601–02, 102 S.Ct. 1957, 1961–62, 72 L.Ed.2d 358 (1982).

However, the interpretation cannot be as broad as the Army would like. In the "broadest" interpretation this Court could find, *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C.Cir.1991), the court held that *lists* of names and addresses were "similar files" and exempt from disclosure. An investigative report of *criminal* charges is an entirely different matter. While the documents at issue certainly concern aspects of the suspects' life, these are not personal file matters. Medical files, payroll records, and regular performance reports fall under Exemption 6. *See Hopkins v. United States Dep't of Hous. & Urban Dev.*, 929 F.2d 81 (2d Cir.1991). The Report of Investigation is not a regularly compiled administrative record. Instead, it was created in response to specific criminal allegations.

The Army's second claimed exemption in this area, Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), also requires a balancing of public and private interests. Exemption 7(C) allows the withholding of

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy ...

■ While citizens have a right to be informed about what their government is up to, they do not have the right to private, personal information simply because that information resides in government files. "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. at 1481. This exemption hinders disclosure of law enforcement investigatory records where disclosure would "constitute an unwarranted invasion of personal privacy." By using the word "unwarranted," Congress mandated that courts balance the competing interests at stake. *Sands v. Murphy*, 633 F.2d 968, 971 n. 4 (1st Cir.1980); *Providence Journal Co. v. FBI*, 602 F.2d 1010, 1013 (1st Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

Exemption 7(C) provides a broader sweep of protection from disclosure than Exemption 6. *Hopkins*, 929 F.2d at 86. Exemption 7(C) applies to the release of personal files as well as information "compiled for law enforcement purposes." *Reporters Comm.*, 489 U.S. at 756, 109 S.Ct. at 1472. The standard under Exemption 7(C) is whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

■ The Court must balance the defendants' interest in privacy against the public interest in disclosure. *New England Apple Council*, 725 F.2d at 143. The suspects of the investigation have a privacy interest in the details of the Report. However, the Report concerns an investigation of specific allegations of misconduct. The other side of the balance contains the public interest in knowing that public servants may be involved in wrongdoing. "The public has a significant, enduring interest in remaining informed about actions taken by public officials in the course of their duties." *Id.* at 144. The suspects are high ranking officials in the Rhode Island Army National Guard. The investigation was not merely a witch hunt; while some of the allegations were found "unsubstantiated," others were judged to be "substantiated." Additionally, the public has an interest in

> knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.

*Stern v. F.B.I.*, 737 F.2d 84, 92 (D.C.Cir. 1984).

The privacy interests of federal employees are diminished due to the public inter-

est discussed above. *See Sullivan v. Veterans Admin.*, 617 F.Supp. 258, 260 (D.D.C.1985) (exemption 6 did not protect investigatory records of government employee accused of using government vehicle for private purposes). "This is particularly true where, as here, the federal employee in question holds a high level position." *Id.* The type of information sought by the Journal is probative of the agency's behavior in this matter. *See Safecard Serv., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991). Upon balancing these interests, the Court concludes that the privacy interests of the suspects are outweighed by the public's interest in disclosure. The names of the suspects must be released.

2. *Investigating Officers' Characterization of Allegations, Summary of Findings, Discussion, Conclusion, and Recommendations*

The Army relies on Exemption 5, 5 U.S.C. § 552(b)(5), as its major justification for withholding information from the Providence Journal. Exemption 5 permits a government agency to withhold from public disclosure:

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency …

This language incorporates into the FOIA all normal civil discovery privileges. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984); *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The exemption generally operates to protect "internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports." *Soucie v. David*, 448 F.2d 1067, 1077 (D.C.Cir.1971). This includes "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980).

The United States Supreme Court has interpreted Exemption 5 numerous times. The Court has held that the "ultimate purpose" of Exemption 5 is "to prevent injury to the quality of agency decisions" by protecting the "decision-making processes of government agencies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975). Exemption 5 shields agencies from prematurely "operat[ing] in the fishbowl." *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (quoting S.Rep. No. 813, 89 Cong., 1st Sess. 9 (1965)). Only advice, recommendations, and opinions which are part of the deliberative processes of government are covered by Exemption 5. In fact, "if an agency chooses expressly to adopt or incorporate by reference in intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5." *NLRB*, 421 U.S. at 161, 95 S.Ct. at 1521.

In *Mink, supra,* the Supreme Court held that Exemption 5 did not protect factual materials from disclosure. Additionally, where deliberative matter is intermingled with purely factual material, the factual material must be disclosed if it is severable. *Mink*, 410 U.S. at 91, 93 S.Ct. at 837. With respect to non-factual materials, the Court determined "[i]n each case, the question [is] whether production of the contested document would be injurious to the consultative function of government…." *Id.* at 87, 93 S.Ct. at 836.

The Supreme Court reiterated the policy behind Exemption 5 in *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). Exemption 5 may only be used "when confidentiality is necessary to ensure frank and open discussion and hence efficient governmental operations." *Id.* at 802, 104 S.Ct. at 1494. Only deliberative processes, not communications promulgating or implementing policy, are protected by Exemption 5.

The Army withheld much of the Report under Exemption 5. It is important to remember that the burden falls on the Army to establish their right to withhold information. *Willamette Indus. Inc. v. United States*, 689 F.2d 865, 868 (9th Cir. 1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C.Cir.1979). Exemption 5, unlike exemptions 6 and 7(C), does not involve a balancing of interests. Agencies need not turn over documents "which would not be available by law to a private party in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have recognized that materials are generally protected under the attorney-client privilege, *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 252–55 (D.C.Cir.1977); the attorney work-product privilege, *NLRB*, 421 U.S. at 154, 95 S.Ct. at 1518; and the executive deliberative process privilege, *Mink*, 410 U.S. at 85–90, 93 S.Ct. at 835–37. The Army argues that the latter privilege applies in this case.

The Court of Appeals for the District of Columbia set forth the definition of the executive privilege in *Coastal States Gas*, 617 F.2d at 866.

> In deciding whether a document should be protected by the privilege we look to whether the document is 'predecisional'—whether it was generated before the adoption of agency policy—*and* whether the document is 'deliberative'—whether it reflects the give-and-take of the consultation process.... Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the view of the agency. (emphasis added).

This standard provides guidance, but the deliberative process privilege remains tremendously fact-specific. The Court must consider each document sought and analyze the role it plays in the administrative process of the agency. Previous cases establish only fragmented portions of the parameters of this privilege.

Although the requirements of the privilege may be hard to describe in concrete terms, this Court believes the IG's Report does not fall under the protection of Exemption 5. On a common sense level, the investigatory report was not a deliberative policy-making document. The investigation concerned factual allegations against high-ranking officials. This is not agency policy in the same vein as *Mink, supra*, where reports were prepared for the President on the advisability of underground nuclear testing. *Mink*, 410 U.S. at 75, 93 S.Ct. at 830.

If the report concerned broader issues— if it was a report of general recommendations on disciplining superior officers—the situation would be different. *Cf., United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984) (where two reports prepared, one investigating a specific accident, the other investigating general safety precautions and procedures, only the general report qualified for FOIA shielding); *Cooper v. Dep't of the Navy*, 558 F.2d 274 (5th Cir.1977) (report disclosed where "primary function [was] defined as to search out, develop, assemble, analyze, and record all available information relative to the matter under investigation and to formulate clearly expressed and consistent findings of fact." *Id.* at 279.). However, this report is factually specific; it does not reflect "agency give-and-take—of the deliberative process—by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975) (*Vaughn II*).

The mere act of selecting facts for inclusion in a report does not make that report deliberative. *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C.Cir.1982). The Army seeks to shield sections of the Report which spell out facts discovered through investigation or which assert factual conclusions. Simple judgment exercised in preparing the Report of Investigation does not equal deliberation. *See Adams v. United States*, 686 F.Supp. 417 (S.D.N.Y.1988). The Army may not withhold this section of the Report.

### 3. Summary of Witness Statements and Witness Identification

 The final exemption claimed by the Army is Exemption 7(D), 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) permits the withholding of

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (D) could reasonably be expected to disclose the identity of a confidential source and, in the case of a record compiled by a law enforcement authority in the course of a criminal investigation ... confidential information furnished only by the confidential source ...

The Army bears the burden of showing that the sources were confidential, either by showing an express assurance of confidentiality or by explaining the circumstances where an assurance of confidentiality can be reasonably inferred. *Brant Const. Co., Inc. v. EPA*, 778 F.2d 1258, 1263 (7th Cir.1985); *Sands v. Murphy*, 633 F.2d 968, 971 (1st Cir.1980). Under Exemption 7(D), the district court does not perform a balancing test. *Irons v. FBI*, 880 F.2d 1446, 1449 (1st Cir.1989); *Curran v. Dep't of Justice*, 813 F.2d 473, 474 (1st Cir.1987).

Exemption 7(D) permits withholding of records or information compiled for law enforcement purposes for two reasons. First, information can be withheld where it could reasonably be expected to disclose the identity of a confidential source; second, information can be withheld where the confidential information could *only* be furnished by the confidential source and no one else. 5 U.S.C. § 552(b)(7)(D). We do not have the latter situation here; the Army received the same information from several different sources.

For the former section of Exemption 7(D), the Army bears the burden of showing that the sources, either explicitly or implicitly, were promised confidentiality. *Sands v. Murphy*, 633 F.2d 968, 971 (1st Cir.1980). The rationale behind this exemp-

tion is to encourage the cooperation of witnesses with law enforcement investigations. *Washington Post Co. v. United States Dep't of the Air Force*, 617 F.Supp. 602, 606 (D.D.C.1985). Without question, confidentiality is important to the continuing effectiveness of any Army IG office.

 Although the Journal believes the promises of confidentiality given by the Army do not rise to a level sufficient to qualify for exemption, this Court finds otherwise. The Army told each witness that their testimony would remain confidential to the extent permitted by law and regulation. Declaration of Lieutenant Colonel William J. Paini at 1. Although the Army did not promise to keep the witnesses confidential under all conceivable circumstances, such an assurance would inevitably sweep too broadly. The assurance given by the IG's office provided a reasonable assurance of confidentiality. *Cf., American Fed'n of Gov't Employees v. Dep't of the Army*, 441 F.Supp. 1308, 1314 (D.D.C.1977). While redaction of witness information cannot eliminate all possible risk of identification, this precaution safeguards interests on both sides. *See Rose*, 425 U.S. at 382, 96 S.Ct. at 1608. The names, ranks, and positions of the witnesses shall be redacted from the Report; however, the content of their statements must be released.

### B. Transcript of the Dimanni Interview

 Since the filing of the complaint in this case, the Army has released much of the transcript of the Dimanni Interview. This came about after Mr. Dimanni consented to its release. However, the Army redacted certain names from the interview transcript. No possible exemption justifies this redaction. Mr. Dimanni has consented to the public exposure of this interview. Given this fact, Exemption 7(D) cannot apply. None of the other exemptions apply to the censure of the names. Mr. Dimanni controlled this information, and it is in his purview to release it. This interview transcript must be released in its entirety.[5]

---

**5.** The Army may redact individual Social Security numbers and home addresses, if any. *Local 3, Int'l Bhd. of Electrical Workers v. NLRB*, 845 F.2d 1177, 1181 (2d Cir.1988) (social security

## C. Directive of Investigation and Expansions of Investigation

 These three documents may be withheld by the Army. In contrast to the Report discussed above, these documents embody the type of inter-agency memoranda protected under Exemption 5. These documents directed the IG's office to investigate certain areas. The documents were pre-investigatory as well as pre-deliberative. There were no findings of fact contained in the documents; they were written before separate stages of the investigation commenced. Disclosure of this sort of internal memoranda could negatively effect agency communication about impending investigations. The three documents, labeled C, D, and E in the Army's *Vaughn* index, may be withheld.

## D. Four Anonymous Letters

 The anonymous letters present a unique legal question. The Army IG received four anonymous letters asserting various allegations against senior officials of the Rhode Island Army National Guard. The Army withheld all the letters under Exemptions 5, 6, 7(C), and 7(D). Only Exemption 7(D) merits any attention by the Court.[6]

 When an agency undertakes law enforcement proceedings, Exemption 7(D) permits the agency to withhold both information that "could reasonably be expected to disclose the identity of a confidential source ..." and "information furnished only by a confidential source." 5 U.S.C. § 522(b)(7)(D). A person is a confidential source "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.Rep. No. 1200, 93rd Cong., 2d Sess. 13 (1974) U.S.Code Cong. & Admin.News, 6267, 6291.

Several cases have held that agencies need not disclose information about source identity even though that identity is already publicly known. *See Irons v. FBI*, 880 F.2d 1446 (1st Cir.1989). Our situation turns this notion on its head. Here, no one knows the identity of the sources, not even the agency striving to keep the documents secret.

In *Irons*, the First Circuit held that information furnished by a confidential source did "not mean that the information or the identity of the source [was] secret; [it] simply mean[t] that the information was 'provided in confidence' at the time it was communicated ..." *Id.* at 1488. The Army contends that although these were anonymous and unsolicited letters, the authors of the letters had an implied assurance of confidentiality. The Army relies on *Brant Constr. Co., Inc. v. United States EPA*, 778 F.2d 1258 (7th Cir.1985). In *Brant*, the court held that unsolicited letter writers had received assurances of confidentiality where the agency had put the public on notice that it would accord confidential treatment to such communications. *Id.* at 1263. The Army claims its regulations puts the public on the same type of notice.

Although this Court very much doubts that obscure Army regulations put the public on notice about the privacy of information communicated to an IG's office, we do not need to further contemplate the issue. Copies of each of the four letters were sent, by the anonymous writers, to other people and offices, including U.S. Army Generals and the Governor of Rhode Island. This Court cannot possibly imply confidentiality when the authors themselves have not acted in a confidential manner. The anonymous letters must be released to the Journal in their entirety.

---

numbers); *FLRA v. United States Dep't of the Navy*, 941 F.2d 49 (1st Cir.1991) (home addresses).

**6.** Exemption 5 covers inter- and intra-agency memorandums or letters. As the letters at issue in this case are anonymous, it is impossible to tell where they come from. Clearly, this is not

the sort of letter Congress had in mind when creating the exemption. Exemption 6, as already discussed, covers none of the material in dispute in this case. Exemption 7(C), concerning a possible unwarranted invasion of privacy, cannot apply to letters where the authors' identity is unknown to all involved.

E. Travel Vouchers

■ Since the filing of this lawsuit, the Army says it has released Major General Trudeau's travel vouchers to the Journal. In response to the October 30, 1991 Order of this Court for an in camera inspection, no travel vouchers were included in the sealed materials. With these two facts in mind, the Court must assume that *all* the items listed in the *Vaughn* index under the travel voucher section were given to the Journal. However, if any of the travel vouchers requested by the Journal did not refer to Major General Trudeau and therefore were not released by the Army, this Court orders their release. Travel vouchers, representations of purely factual matters, cannot be withheld under any FOIA exemption.

### III

As our government becomes increasingly complex, the power of governmental agencies grows proportionally. Elected officials do not run agencies, yet these same officials control much of the operation of our government. In 1966, a far-sighted Congress enacted the Freedom of Information Act. The FOIA demands that administrative agencies function in the open—not behind a veil of secrecy. The governed have a right and a need to know how their government works; the FOIA provides a key to public education and understanding.

It is no different when the agency in question happens to be a branch of the armed forces. The military has the specific function of defense, but how it carries out that function is of interest and importance to all of us. The Court understands why the military functions with a great deal of secrecy at almost all times. However, the abiding principle that the people share a voice in their government mandates that they know about its operation whenever possible. In this case, the Army has no special privilege and needs no special treatment.

For the reasons enumerated above, the Army may redact the witness names, ranks, and positions from the Report of Investigation, and it may withhold the Directive of Investigation and both Expansions of Investigation. The rest of the Report of Investigation and all other documents listed in the *Vaughn* Index will be released, uncensored, to the Providence Journal.

SO ORDERED.

### APPENDIX A

### Material Withheld under FOIA Exemptions

### A. REPORT OF INVESTIGATION

● **Document Description:** 33–page report of results of investigation produced by investigating officers from the Office of the Inspector General, Department of the Army. The document summarizes the evidence adduced on each of the 12 allegations lodged against the suspects of the report and contains the investigating officers' findings, conclusions, and recommendations. The report consists of two sections. The first (4 pages) is an Executive Summary, which provides a synopsis of the investigating officers' findings and conclusions. The second (28 pages) is a detailed description of the evidence and the investigating officers' findings and conclusions.

● **Nature of Material Withheld:** Plaintiffs received a redacted version of the Report of the Investigation. The Army withheld the following material:

A–1 **Names of Suspects:** The names of the subjects of the investigation were removed throughout the report, based on Exemption 6, 5 U.S.C. § 552(b)(6), and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).

A–2 **Investigating Officers' Characterization of the Allegations:** The Executive Summary contains a list of the allegations made against the suspects. The Army redacted the investigating officers' characterization of the allegations as either "substantiated" or "unsubstantiated." These characterizations constitute the investigating officers' con-

clusions and were withheld based on Exemption 5, 5 U.S.C. § 552(b)(5).

**A–3 Summary of Investigating Officers' Findings:** The Executive Summary includes a Synopsis containing a short description of the allegations and, in six paragraphs, the investigating officers' findings. The findings were withheld based on Exemption 5, 5 U.S.C. § 552(b)(5).

**A–4 Summary of Witness Statements:** The main body of the Report of Investigation consists of the "Consideration of Allegations." Under each of the 12 allegations are summaries of witness interviews relevant to the particular allegation. All witnesses interviewed received promises of confidentiality. These paragraphs were withheld under Exemption 5, 5 U.S.C. § 552(b)(5) and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

**A–5 Discussion:** Under each of the 12 allegations in the main body of the Report of Investigation is a paragraph labelled "Discussion." These paragraphs contain the investigating officers' summaries of the pertinent evidence on each allegation; the paragraphs comprise the investigating officers' findings. This material was withheld under Exemption 5, 5 U.S.C. § 552(b)(5). To the extent the paragraphs include descriptions of testimony received from witness interviews, the material was withheld under Exemption 5, 5 U.S.C. § 552(b)(5), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

**A–6 Conclusion:** Under each of the 12 allegations in the main body of the Report of Investigation is a paragraph labelled "Conclusion." These paragraphs consist of one-sentence statements reflecting the investigating officers' judgment as to whether the evidence supports or does not support the particular allegation. The Conclusion paragraphs state whether a particular allegation was substantiated or not substantiated. This material was withheld under Exemption 5, 5 U.S.C. § 552(b)(5).

**A–7 Recommendations:** Page 33 of the Report of Investigation includes two paragraphs containing the investigating officers' recommendations. These recommendations reflect the investigating officers' judgment as to what the Army should do with the report. This material was withheld under Exemption 5, 5 U.S.C. § 552(b)(5).

**B. TRANSCRIPT OF TESTIMONY OF MR. LOUIS A. DIMANNI**

● **Document Description:** 28–page transcript of interview conducted by investigating officers with Mr. Louis DiManni concerning some of the allegations that are the subject of the Report of Investigation. Attached to the transcript is a cover page, titled "Notification of Witness," which describes the notice given to Mr. DiManni about the interview, including the time and place. At the beginning of the interview, the investigating officers told Mr. DiManni that the information provided would be kept confidential.

● **Nature of Material Withheld:**

**B–1** The Army withheld the entire 28–page transcript and the attached cover page based on Exemption 5, 5 U.S.C. § 552(b)(5), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

**C. DIRECTIVE FOR INVESTIGATION**

● **Document Description:** The Directive for Investigation consists of two separate memoranda—(1) two-page memorandum, dated May 24, 1988, from the acting Department of the Army Inspector General to the Vice Chief of the Army outlining the allegations lodged against officials of the Rhode Island National Guard and seeking approval to initiate an investigation; and (2) one-page memorandum, dated May 25, 1988, from the Vice Chief of Staff of the Army directing an investigation of the allegations.

● **Nature of Material Withheld:**

C–1 The Army withheld the entire three-page document based on Exemption 6, 5 U.S.C. § 552(b)(6), and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).

## D. EXPANSION OF INVESTIGATION (August 12, 1988)

● **Document Description:** One-page memorandum, dated August 12, 1988, from the Department of the Army Inspector General to the Vice Chief of Staff of the Army outlining new allegations against official(s) of the Rhode Island Army National Guard incorporated into the investigation. The memorandum includes the approval of the Vice Chief of Staff, dated August 12, 1988.

● **Nature of Material Withheld:**

D–1 The Army withheld the entire three-page document based on Exemption 6, 5 U.S.C. § 552(b)(6), and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).

## E. EXPANSION OF INVESTIGATION (December 21, 1988)

● **Document Description:** One-page memorandum, dated December 21, 1988, from the Department of the Army Inspector General to the Vice Chief of Staff of the Army outlining new allegations against official(s) of the Rhode Island Army National Guard incorporated into the investigation. The memorandum includes the description of testimony of a "knowledgeable witness." The memorandum includes the approval of the Vice Chief of Staff, dated December 21, 1988.

● **Nature of Material Withheld:**

E–1 The Army withheld the entire three-page document based on Exemption 6, 5 U.S.C. § 552(b)(6), Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

## F. ANONYMOUS LETTER (April 8, 1988)

● **Document Description:** Two-page unsigned letter, dated April 8, 1988, to the Department of the Army Inspector General (with a copy to the Chief of Staff of the Army) making allegations against a senior official of the Rhode Island Army National Guard. The letter asserts that the official wore unauthorized awards and decorations, and improperly held himself out as an Army War College Graduate. The letter also states that members of the National Guard are afraid to speak out for fear of reprisals. Attached to the letter is a two-page biographical sketch of the official.

● **Nature of Material Withheld:**

F–1 The Army withheld the entire two-page letter and two-page attachment based on Exemption 5, 5 U.S.C. § 552(b)(5), Exemption 6, 5 U.S.C. § 552(b)(6), Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

## G. ANONYMOUS LETTER (April 21, 1988)

● **Document Description:** Two-page unsigned letter, dated 21 April 1988, to the Department of the Army Inspector General (with a copy to the Governor of Rhode Island) making allegations against a number of officials of the Rhode Island Army National Guard. The letter includes allegations against lower-ranking officers of the Rhode Island Army National Guard, who were not subjects of the Inspector General investigation. Included are allegations of alcoholism, unauthorized wear of awards and decorations, egotism, use of aliases during travel to cover sexual escapades, mismanagement, misuse of authority, and termination from civilian employment. Attached to the letter is a one-page memorandum to the Inspector General, National Guard Bureau (with copies to the Chief, National Guard Bureau; Brigadier General J. Kiley [sic]; and Governor DiPrete) alleging that an official of the Rhode

Island National Guard wore unauthorized awards and decorations.

● **Nature of Material Withheld:**

G–1 The Army withheld the entire two-page letter and one-page attachment based on Exemption 5, 5 U.S.C. § 552(b)(5), Exemption 6, 5 U.S.C. § 552(b)(6), Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

## H. ANONYMOUS LETTER (Undated)

● **Document Description:** One-page unsigned letter to the Controller [sic], National Guard Bureau (with a copy to the Chief, National Guard Bureau; Department of the Army Inspector General; and Governor of Rhode Island) alleging that a senior official of the Rhode Island Army National Guard improperly used frequent flyer bonus points acquired during official government travel.

● **Nature of Material Withheld:**

H–1 The Army withheld the entire two-page letter and one-page attachment based on Exemption 5, 5 U.S.C. § 552(b)(5), Exemption 6, 5 U.S.C. § 552(b)(6), Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

## I. ANONYMOUS LETTER (November 21, 1988)

● **Document Description:** One-page unsigned letter, dated November 21, 1988, to the Department of the Army Inspector General, alleging improper use of Rhode Island Army National Guard mailing labels for political literature. The letter also claims the labels were used for political purposes, that a senior official of the Guard endorsed a political candidate, that the state covers-up wrongdoing, that money was improperly used for air conditioners, and that the state inspector general conducted shoddy investigations of the allegations. The writer refused to sign his name to the letter, citing the fear of retribution.

● **Nature of Material Withheld:**

I–1 The Army withheld the entire one-page letter and one-page attachment based on Exemption 5, 5 U.S.C. § 552(b)(5), Exemption 6, 5 U.S.C. § 552(b)(6), Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and Exemption 7(D), 5 U.S.C. § 552(b)(7)(D).

## J. TRAVEL VOUCHERS

● **Document Description:** 306 pages of various documents reflecting official travel of senior official of Rhode Island Army National Guard. Included are the following documents:

● One-page cover memorandum from U.S. Fiscal & Property Officer to the Department of the Army Inspector General transmitting travel claims from FY 1986–1988.

● One-page computer print-out describing travel order numbers, dates, and payments between August 28, 1986 to March 8, 1988.

● Three-page computer print-out of travel order numbers, dates, issuing headquarters, travel dates, amounts, and status of payments for July 3, 1986 to March 17, 1988.

● Department of Defense [DD] Forms 1588 (four pages)—Record of Travel Payments—listing travel order numbers, dates, issuing headquarters, dates of travel, amounts paid, when paid, how paid, and coded descriptions of travel for August 1984 to July 1986.

● Military Travel Worksheets and Travel Vouchers (multiple copies reflecting different trips) containing summaries of payments for travel (mileage, registration fees, reimbursable expenses, per diem), and government fund cites.

● DD Forms 1351–2—Travel Voucher or Subvoucher—(multiple copies reflecting separate trips) submitted by individual to recoup travel expenses. Among other things, form contains dates, times, and modes of travel; expenses; nature of payment de-

**892**

sired; travel-order numbers, dates, and issuing headquarters.

● Travel orders (multiple copies reflecting separate trips) containing authorization to travel, travel dates, destination, nature of duty, purpose, additional instructions, and government fund cite. Several orders have amendments, which change various aspects of the principal orders (*e.g.*, travel dates).

● **Nature of Material Withheld:**

J–1 The Army withheld all 306 pages based on Exemption 6, 5 U.S.C. § 552(b)(6), and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).