**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,**

v.

**DEPARTMENT OF the ARMY et al., Defendants.**

**Civ. A. No. 77–0062.**

United States District Court, District of Columbia.

Dec. 5, 1977.

## MEMORANDUM

GASCH, District Judge.

Plaintiffs William McLean and the American Federation of Government Employees ("AFGE") bring this action under the Freedom of Information Act ("FOIA")[1] seeking complete disclosure of an Army Inspector General Investigation Report. The Report concerns alleged personnel management irregularities at the U.S. Army Inter-Agency Communication Agency ("USAICA"), located in Winchester, Virginia. The Army made available parts of the Report but refuses to disclose: (a) the "discussion, conclusions, and recommendations" contained in the Report; and (b) the testimony of three witnesses given to the investigating officer during his investigation. Defendants contend that these portions of the Report are protected from disclosure pursuant to Exemption Five, which has been interpreted to cover predecisional, deliberative intra-agency memoranda and certain confidential testimony.[2] Plaintiffs argue that the contested material is not exempt and that the entire Report is mandatorily disclosable as a "final opinion."[3]

Presently before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court concludes that defendants' motion should be granted and plaintiffs' motion should be denied.

## BACKGROUND

### A. The Inspector General Process.

In considering the issues raised in this action, it is useful at the outset to discuss briefly the Army Inspector General process and the role of the Report at issue within that process. Army Regulation No. 20–1, which prescribes policies and procedures for Inspector General activities, describes Inspectors General as the "confidential representatives" of their commanders. They have the general duty of inquiring into and reporting upon "matters affecting the performance of mission and the state of econo-

Mark D. Roth, Washington, D. C., for plaintiffs.

Lawrence T. Bennett, Asst. U. S. Atty., and Steven Vaughn, Office of Gen. Counsel, Dept. of the Army, Washington, D. C., for defendants.

1. 5 U.S.C. § 552, *as amended* (1970 and Supp. V 1975).

2. 5 U.S.C. § 552(b)(5).

3. 5 U.S.C. § 552(a)(2)(A).

my, efficiency, discipline, and morale of the activity in which they serve.[4]

The functions of the Inspectors General include, *inter alia*, conducting investigations at the direction of their commander and reporting thereon to their commander.[5] In reporting on an investigation, Inspectors General (or their investigatory officers) should "discuss the evidence presented and . . . reach conclusions and make recommendations based upon available evidence."[6] When a commander has ordered the investigation, the senior Inspector General within the command reviews the investigation report and submits it to the commander with recommendations. The commander shall approve or disapprove the report in its entirety or in part and take appropriate action on the approved portions.[7] The commander is not required to accept the conclusions and recommendations in the report, but may go outside the record contained in the report and even completely disregard it in reaching his decision about the matter investigated.[8]

### B. *Facts of This Case.*

The facts in this case are not disputed. Plaintiff McLean is a civilian employed in USAICA, a unit of the U.S. Army Communications Command ("USACC"), who requested that the Inspector General of USACC investigate alleged irregularities in personnel management at USAICA.[9] The Commander of USACC, the final decision-making authority in regard to the allegations, ordered the Commander of USACC–CONUS (a subordinate command) to investigate the allegations. Consequently, Colonel Rusanowsky, the Inspector General of

USACC–CONUS, investigated the matter and prepared the Report at issue. After considering the Report, the Commander of USACC (acting through his Deputy Commander) noted his approval of the Report on a "Disposition Form."[10] The Commander also directed that a letter be sent to plaintiff McLean describing the conclusions resulting from the investigation and the intended corrective action.[11]

Soon thereafter, McLean requested a copy of the Report. The Report contains seven different sections. Parts I–III, containing introductory matter, were disclosed; Part IV, entitled "Allegations, Evidence, Discussion, and Conclusions," was only disclosed to the extent of the "Allegations" and "Evidence" portions; Parts V, VI, and VII, entitled "Discussion," "General Conclusions," and "Recommendations," were not disclosed. Attached to the Report are the statements of witnesses interrogated, but the statements of three witnesses were not disclosed. These witnesses would not consent to disclosure of their testimony. Plaintiff McLean challenged the nondisclosure of parts of the Report and has exhausted his administrative remedies.[12] On January 11, 1977, McLean and plaintiff AFGE filed this action under the FOIA. Both plaintiffs and defendants have moved for summary judgment.

### MERITS

### A. *Plaintiffs' Argument that the Entire Report is Disclosable as a "Final Opinion."*

Plaintiffs initially argue that the Inspector General Report is the Commander's "fi-

---

**4.** Fuller Affidavit, Exhibit H; Army Regulation No. 20–1, Inspector General Activities and Procedures, ¶ 1–5(b) (hereinafter cited as "Army Reg. 20–1").

**5.** *Id.*, at ¶¶ 1–7(b)(2).

**6.** *Id.*, at ¶ 4(2).

**7.** *Id.*, at ¶¶ 4–9(b)(1)(b), (b)(2).

**8.** *See* Fuller Affidavit, ¶ 6(a).

**9.** Plaintiff McLean is employed at USAICA as a TV Production Specialist. He and two co-workers requested an investigation of manage-

ment implementation of training and career programs, civil service standards, award competitions, and certain personnel regulations. *See* Fuller Affidavit, Exhibit A.

**10.** *See* Fuller Affidavit, Exhibit E. Although the Deputy Commander actually acted on the Report, the Court, in the interest of consistency in this Memorandum, refers to the Commander as the acting authority.

**11.** *See* Fuller Affidavit, Exhibit F.

**12.** *See* Fuller Affidavit, ¶ 5.

nal opinion" and must be disclosed in its entirety pursuant to the express language of 5 U.S.C. § 552(a)(2)(A). Plaintiffs contend that the Commander, by noting on the Disposition Form his approval of the Report, adopted the Report as his final opinion. This argument cannot withstand close analysis.

■ In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), the Supreme Court characterized final opinions as *"primarily* postdecisional—looking back on and explaining . . . a decision already reached or a policy already adopted . . . ." The Court added that disclosure of final opinions "poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decisions." 421 U.S. at 152 n. 19, 95 S.Ct. at 1517. In the case at bar, the Inspector General's Report was prepared for the review of the Commander, who was the final decisionmaking authority in regard to the matters investigated. The Report is entirely predecisional in its nature and purpose and does not necessarily explain or justify a final decision subsequently reached.[13] Moreover, full disclosure of this and future Inspector General Reports as final opinions will deny investigating officers the confidentiality necessary to ensure their candid and comprehensive expression of opinions, conclusions, and recommendations.[14]

Plaintiffs nevertheless contend that the Report lost its predecisional character and became the Commander's final opinion when he approved it. But the fact that the Commander "approved" the Report does not automatically transform it into a final opinion. After reviewing the Report, the Commander directed that a letter be sent to plaintiff McLean and his co-workers setting forth the Commander's final conclusions about the allegations and the necessary corrective action. This letter, and not the Report or the Disposition Form, was intended as a public expression of the Commander's final decision about the matter investigated. Although the Commander approved the Report, the Report cannot logically be viewed as the Commander's "final opinion."

■ Moreover, there is no basis for concluding that the Commander's approval of the Report represents his adoption of the opinions and reasonings contained in the Report. The Commander could have approved the Report and adopted its conclusions without necessarily adopting the rationale supporting those conclusions.[15] In this case, the Court cannot conclude with certainty that the opinions and conclusions in the Report are the basis for the Commander's decision. The Supreme Court similarly refused to order disclosure in *Renegotiation Board v. Grumman Engineering Corp.*, 421 U.S. 168, 192, 95 S.Ct. 1491, 1504, 44 L.Ed.2d 57 (1975), where the Court concluded:

> It is not for us to require disclosure of documents, under the purported authority of the Act, which are not final opinions, which do not accurately set forth the reasons for the Board's decisions, and the disclosure of which would impinge on the Board's predecisional processes.

Accordingly, the Court will not require disclosure of the Report as a final opinion.[16]

---

13. Thus, the Report is very different from the NLRB General Counsel's Appeals Memoranda held in *Sears* to constitute a final opinion. These memoranda are prepared *after* a decision is reached by the Appeals Committee, and they set forth the decision and the reasons for it. 421 U.S. at 140, 95 S.Ct. 1504.

14. *See* Fuller Affidavit, ¶ 6(a).

15. *See id.*, and text accompanying note 8 *supra.*

16. For essentially the same reasons that the Court rejects plaintiffs' argument that the Report is a final opinion, the Court also rejects the contention that the Report is disclosable because it was expressly incorporated or adopted in a final opinion (*i. e.,* the "Disposition Form"). *See NLRB v. Sears, supra,* 421 U.S. at 161, 95 S.Ct. 1504. The approval on the Disposition Form was summary in nature and not an *express* adoption of the conclusions and reasoning contained in the Report.

The Court also notes that the incorporation argument fails because the Disposition Form cannot reasonably be viewed as a final opinion. The Form does not explain the Commander's decision; it simply indicates his approval of the Inspector General's Report. Moreover, despite plaintiffs' urging to the contrary, the mere fact

**B. Defendants' Argument that the "Discussion and Conclusions" Portion of the Report are Within the Scope of Exemption Five.**

Although the Report is not mandatorily disclosable as a final opinion, defendants still must prove that the withheld portions are exempt from disclosure. Defendants assert that the material is within the scope of Exemption Five. 5 U.S.C. § 552(b)(5). Plaintiffs concede that the "Recommendations" portion is covered by the exemption,[17] but vigorously dispute that the "Discussion and Conclusions" portions are covered by it.

■ Exemption Five makes nondisclosable "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency." The exemption essentially applies to predecisional intra-agency memoranda that are part of the deliberative or policy-making processes of an agency. *See EPA v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The exemption is intended to encourage a free and candid exchange of ideas during the decisionmaking process, thereby preventing injury to the quality of agency decisions. Accordingly, the Supreme Court has recognized that purely factual investigative material is not within the scope of the exemption. *EPA v. Mink*, 410 U.S. at 89, 93 S.Ct. at 827. Plaintiffs do not argue that the "Discussion and Conclusions" portions are purely factual in nature, but rather that they represent the final, objective findings of a professional evalua-

tor which are not part of the deliberative process.

Plaintiffs rely primarily on two decisions as supporting their position. The Court concludes that these decisions involved facts distinguishable from the facts in the instant case, and the Court holds that the "Discussions and Conclusions" parts of the Report are covered by Exemption Five. Plaintiffs cite *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 523 F.2d 1136 (1975), in which the court, after looking at the evaluative portions of reports on agency personnel management, concluded that the material constituted final objective analyses of agency performance and provided raw data not part of the predecisional process. In *Vaughn*, the court emphasized that the material at issue was not part of a "single deliberative process assuredly leading to a decision which would be made public." 173 U.S.App.D.C. at 199, 523 F.2d at 1147 n. 38. The government conceded that the reports on agency personnel management were final but argued that they were exempt as part of a "continuous ongoing process of management appraisal." 173 U.S.App.D.C. at 196, 523 F.2d at 1145.

■ In the instant case, the Inspector General Report unquestionably is part of a "single deliberative process" leading to a final decision, which was made public in a letter sent to plaintiff McLean. Moreover, the "Discussion and Conclusions" parts of the Report, unlike the final objective analyses in *Vaughn*, are not final and need not be accepted by the Commander in reaching his final decision.[18] The holding in *Vaughn*

---

that the Disposition Form represents a final disposition does not mean it constitutes a final opinion. Plaintiffs erroneously construe language from *Sears* as supporting this proposition. *NLRB v. Sears*, 421 U.S. at 153–54, 95 S.Ct. at 1518 (final opinions "not only invariably explain agency action already taken . . ., but also constitute 'final dispositions' of matters by an agency.") The Supreme Court merely was saying that documents that are final opinions usually serve the additional purpose of being final dispositions.

**17.** *See* Plaintiffs' Cross-Motion for Summary Judgment, at 22 n. 4.
**18.** *See* notes 7 and 8 *supra* and accompanying text. In *Vaughn*, the court also emphasized that the government's affidavits failed to specify what role the evaluative portions at issue play in agency deliberations. In the case at bar, however, the Inspector General of the Army has submitted an affidavit describing the role of the Inspector General's Report in the decisional process and the need for confidentiality of an investigator's opinions and conclusions. *See* Fuller Affidavit, ¶ 6(a).

does not control the facts of the case before the Court.

Plaintiffs also cite *Machin v. Zuckert*, 114 U.S.App.D.C. 335, 316 F.2d 336, *cert. denied*, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), in which the court held that the opinions and conclusions in an Air Force Accident Investigative Report were discoverable. That case concerned the factual findings, opinions, and conclusions of specialized mechanics regarding possible defects in propellers that may have caused an airplane crash. In relying on *Machin*, however, plaintiffs overlook that the opinions and conclusions of airplane mechanics in an accident investigation would be considerably less subjective than opinions and conclusions regarding personnel management irregularities and other matters of Army management policy and personnel relations.[19] Furthermore, in the instant case, the investigator was neither acting in his field of expertise nor making final findings and conclusions on the alleged personnel mismanagement.

Plaintiffs' reliance on *Vaughn* and *Machin* reflects their inaccurate characterization of the Inspector General's Report and its role in the Inspector General process. The affidavits submitted by the defendants and the applicable Army regulation make clear that Inspector General reports play an integral part in the consultative process leading to a commander's final decision about a matter investigated. Accordingly, the Court concludes the "Discussions and Conclusions" parts of the Report, which are primarily deliberative in nature, are properly exempt from disclosure.

### C. Defendants' Argument that the Witnesses' Statements are Within the Scope of Exemption Five.

Attached to the Inspector General's Report upon its submission to the Commander were the transcripts of testimony of several witnesses. Three of the witnesses have not consented to the disclosure of their statements to plaintiffs. Defendants argue that the statements fall within several exemptions, but the Court considers only the applicability of Exemption Five and concludes that the witnesses' statements are covered by that exemption.[20]

Plaintiffs concede, as they must, that a qualified privilege from disclosure exists under Exemption Five for witnesses' statements when confidentiality is essential to securing information from witnesses. *See Machin v. Zuckert*, 114 U.S.App.D.C. 335, 316 F.2d 336 (1963); *Brockway v. Dept. of Air Force*, 518 F.2d 1184 (8th Cir. 1975); *Rabbitt v. Dept. of Air Force*, 401 F.Supp. 1206 (S.D.N.Y.1974). Thus, the issue before the Court is whether an exemption from general public disclosure is necessary for the securing of full testimony from witnesses during an Inspector General's investigation of Army management practices.

Plaintiffs, in arguing in favor of disclosure, narrowly focus on the question of whether public disclosure of the witnesses' statements will deter further cooperation in the instant case. The Court, however, in deciding whether the witnesses' statements should be exempt from disclosure under the FOIA, must concentrate on the probable effect of a holding in favor of disclosure on the future operation of the Inspector General process. At the outset, it is clear that

---

**19.** It is important to note that the court's order in *Machin* requiring disclosure of the mechanics' opinions and conclusions was not unqualified. The court recognized that *in camera* inspection by the district court was necessary for an ultimate determination of what material in the mechanics' reports was privileged. 114 U.S.App.D.C. at 340, 316 F.2d at 341.

This Court, recognizing that the "Discussions and Conclusions" portions of the Report may not in fact be deliberative in nature, *see Moore-McCormack Lines, Inc. v. I. T. O. Corp.*, 508 F.2d 945, 948 (4th Cir. 1974), ordered submis-

sion of the entire Report for *in camera* inspection. After examining the contested materials and observing that they primarily contain the opinions and evaluative judgments of the investigating officer, the Court remains convinced that the materials are properly protected from disclosure pursuant to Exemption Five.

**20.** Defendants also have contended that the statements are covered by Exemption Six for "personnel and medical files and similar files" and Exemption Seven for "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(6), (7).

in this case promises of confidentiality were not necessary for securing the testimony of employees in the division being investigated.[21] Moreover, the witnesses were not given absolute assurances of confidentiality; they were told that public disclosure of direct testimony might be required, but would be "kept to the minimum necessary for satisfaction of the legal or public interest requirements."

 Although absolute confidentiality is not necessary to obtain Department of Defense employees' testimony in Inspector General investigations, the Court is of the opinion that disclosure of such testimony under the FOIA will interfere considerably with the Inspector General's capacity to conduct full investigations. The witnesses connected with the instant case, and other witnesses currently testifying in Inspector General investigations, are on notice that *in unusual circumstances* their testimony may be publicly disclosed.[22] It is doubtful that this limited qualification itself acts as a major barrier to candid and full testimony by witnesses. On the other hand, common sense dictates that a warning to witnesses that their testimony will be generally disclosable under the FOIA would discourage candor and would severely limit the effectiveness of Inspector General investigations. In cases of management irregularities, the degree to which persons will cooperate by volunteering their unsolicited testimony and by testifying fully depends largely on the degree to which they believe their testimony will remain confidential. The Court views as unrealistic plaintiffs' suggestion that the facts of each particular case be examined to determine whether nondisclosure of witnesses' statements is justified. Witnesses in future Inspector General investigations, many of which undoubtedly will concern more controversial matters than the present case, cannot be expected to rely on an uncertain assurance that a court will not require public disclosure of their testimony.

The Court therefore concludes that the witnesses' statements are nondisclosable because they are within Exemption Five.

---

**21.** Department of Defense employees are required to cooperate fully with official investigations. *See* Fuller Affidavit, at ¶ 6(b).

**22.** *See* Army Reg. 20–1, at ¶¶ 4–6(a).