**Paul J. AHEARN, Plaintiff,**

v.

**U.S. ARMY MATERIALS AND MECHANICS RESEARCH CENTER and Department of the Army, Defendants.**

**Civ. A. No. 82–3396–C.**

United States District Court,
D. Massachusetts.

Feb. 27, 1984.

Sondra Long Shick, Newton, Centre, Mass., for plaintiff.

Joseph J. McGovern, III, Asst. U.S. Atty., Boston, Mass., for defendants.

MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by Paul J. Ahearn against the United States Army Materials and Mechanics Research Center ("AMMRC") and the Department of the Army ("DA"). Plaintiff alleges that the defendants failed to supply him with documents to which he is entitled as a matter of law under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff has exhausted his administrative remedies. The case is before the Court on defendants' motion for summary judgment. The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B).

Plaintiff is a civilian employee of the Army. Since 1950, he has been employed by AMMRC, a subordinate unit of the United States Army Material Development and Readiness Command ("DARCOM") located in Watertown, Massachusetts. Plaintiff holds a Ph.D. and currently works as a supervisory metallurgist.

On June 24, 1980, plaintiff asked the Inspector General of DARCOM to investigate certain alleged improprieties by senior DA personnel employed at AMMRC. Specifically, plaintiff charged that (1) an AMMRC employee knowingly permitted a misrepresentation of his educational credentials by allowing himself to be referred to as a doctor before his Ph.D. degree was awarded; (2) an AMMRC employee used government funds and facilities to accomplish a research project not of value to the Army and which became a data base for his Ph.D. dissertation; (3) an AMMRC employee misused his position as Director of AMMRC as repayment for past favors; and (4) there were irregularities by

AMMRC officials in the awarding of AMMRC contracts to a civilian corporation. The Inspector General of DARCOM referred the matter to his superior, the Inspector General of the Army ("IG"). The IG then directed two of his investigating officers to conduct an inquiry at AMMRC to determine whether any statutes or regulations had been violated.

The inquiry was conducted between August 7, 1980 and May 27, 1981. The results of the inquiry, including facts, conclusions and recommendations, were compiled in a Report of Inquiry ("ROI"). On or about August 25, 1981, the ROI in this matter was forwarded to General John W. Vessey, then Vice Chief of Staff, DA. General Vessey approved the ROI and directed that it be forwarded to the Commander of DARCOM for appropriate action. The memorandum attached to the ROI indicated no more than that the full text of the report was being forwarded to the Commander.

In September 1981, plaintiff wrote to the IG requesting a copy of the ROI. His request was denied. In October 1981, plaintiff requested from General Vessey information as to the General's final resolution of the charges plaintiff had made. This request, too, was denied. Plaintiff repeated his request. This time, the IG informed plaintiff of his right to request information under the FOIA and explained the procedure for doing so.

By letter dated January 4, 1982, to the IG, plaintiff requested under the FOIA a copy of the ROI, including the basic report, conclusions and recommendations, but excluding exhibits and testimony. The IG released to plaintiff the factual portions of the ROI and withheld the opinions, conclusions and recommendations of the investigating officers. The IG also withheld excerpts taken from the testimony of witnesses who refused to consent to the release of their statements. In February 1982, plaintiff solicited the aid of Senator Paul Tsongas in obtaining additional information about the IG inquiry. A DA official responded to Senator Tsongas' inquiry by letter in which he described the results of

the IG investigation. He stated that the ROI showed that an AMMRC employee had indeed misrepresented his academic credentials by allowing himself to be referred to as "doctor" before his Ph.D. was awarded; that there was no evidence that the employee had received any unfair advantage at AMMRC from using the title "doctor;" and that the remaining allegations made by plaintiff were not substantiated by the inquiry.

In May 1982, plaintiff appealed the partial denial of his FOIA request, but the denial was affirmed. Plaintiff, however, was provided with additional factual information and the testimony of those witnesses who had consented to the release of their statements. Then, by letter dated September 2, 1982, plaintiff's attorney requested that the DA provide plaintiff with the results of the ROI and the verbatim testimony of certain witnesses who had refused to consent to the release of their statements.* Plaintiff's attorney was informed that her client had received all those portions of the ROI and the witness testimony to which he was entitled under the FOIA. Subsequent requests by plaintiff proved futile, and so on November 9, 1982, plaintiff filed this action to compel production.

■ Defendants assert that they have properly withheld the portions of the IG's report containing "opinions, conclusions and recommendations" because the material is exempt from mandatory disclosure under 5 U.S.C. § 552(b)(5). Exemption 5 permits the withholding of documents which a private party could not discover in civil litigation with an agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The exemption applies to, among other things, predecisional intra-agency memoranda that are part of the deliberative or policy-making processes of an agency. *EPA v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827,

837, 35 L.Ed.2d 119 (1973). Although Exemption 5 excludes such materials from disclosure under the FOIA, when an advisory report is adopted by a decision-maker, it loses its Exemption 5 status. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 161, 95 S.Ct. at 1521.

■ Defendants contend that the opinions, conclusions and recommendations of the investigating officers constitute predecisional intra-agency communications. Plaintiff does not contest that the ROI, when initially prepared, was Exemption 5 material. Plaintiff asserts, however, that General Vessey, the decision-making authority, adopted the ROI in full and, consequently, the report was stripped of its Exemption 5 protected status. The Court cannot accept plaintiff's argument. For an intra-agency memorandum to lose its Exemption 5 protected status, it must be *expressly* adopted or incorporated by reference by the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 161, 95 S.Ct. at 1521; *9to5 Organization for Women Office Workers v. Board of Governors of the Federal Reserve System*, 547 F.Supp. 846, 849 (D.Mass.1982). Here, General Vessey forwarded the ROI in full to the Commander of DARCOM for appropriate action. Contrary to plaintiff's view, the Court finds that the memorandum attached to the ROI gives no indication that the reasoning of the report has been adopted. The record merely shows that General Vessey approved the ROI and that he reached the same result as that of the investigating officers. This Court cannot conclude, then, that the General agreed with the opinions, conclusions and recommendations contained in the ROI. *Accord American Federation of Government Employees v. Department of Army*, 441 F.Supp. 1308, 1311 (D.D.C.1977). Accordingly, the Court rules that the opinions, conclusions and recommendations contained in the ROI are predecisional, and thus properly excludable under Exemption 5.

* In her September 2, 1982 letter, plaintiff's attorney also requested that other specified documents be produced. Some of the documents were located and given to plaintiff. The remainder of the documents were determined by the DA not to exist. These additional document requests, therefore, are not important to this motion.

**1408**

The Court's ruling is reinforced by the good faith actions of the defendants. Defendants have, on several occasions, provided plaintiff with portions of the ROI they have determined to be factual in nature. Defendants have also released to plaintiff the testimony of those witnesses who consented to the release of their statements. Further, in correspondence directed to Senator Tsongas, defendants outlined the conclusions reached by the IG after completion of the investigation. A copy of the letter has been made available to plaintiff. I find, therefore, that defendants have complied with the letter and spirit of the FOIA with regard to the IG report.

The defendants have also withheld from plaintiff the testimony of those witnesses who have not consented to the release of their statements. Defendants maintain that this witness testimony is exempt from disclosure under Exemptions 5, 6 and 7(C). 5 U.S.C. §§ 552(b)(5), (6), (7)(C). The government agency bears the burden of proving that the requested information falls under one or more of these exemptions. 5 U.S.C. § 552(a)(4)(B). I rule that, at this time, defendants have failed to carry their burden. The Court refuses to accept defendants' sweeping claim made with respect to the witness testimony that the requested transcripts are exempt in their entirety. The Court's familiarity with the contents of the witness testimony is limited to the conclusory descriptions of the material contained in defendants' brief and accompanying affidavits. I therefore rule that *in camera* inspection of the testimony of witnesses Wright, Valencia and Burke is appropriate. The Court defers consideration of defendants' Exemption 5, 6 and 7(C) claims with regard to the witness testimony until such time as the requested transcripts are submitted to the Court.

Order accordingly.