Martha O. DALITZKY, Plaintiff,

v.

U.S. SMALL BUSINESS ADMINISTRATION, Defendant.

Civ. A. No. 91-30153-F.

United States District Court, D. Massachusetts.

Sept. 23, 1992.

Charles W. Danis, Jr., Egan, Flanagan &
Cohen, Springfield, Mass., for plaintiff.

Karen L. Goodwin, U.S. Atty.'s Office, Springfield, Mass., Mary E. Keane, Small Business Admin., Washington, D.C., for defendant.

### ORDER

FREEDMAN, Senior District Judge.

Before the Court is the Magistrate Judge's Report and Recommendation entered on September 2, 1992. No objection to the recommendation having been filed it is hereby ordered that it be adopted. The plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is allowed.

It is so ordered.

### REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT [1]

(Docket Nos. 13, 17).

September 2, 1992

PONSOR, United States Magistrate Judge.

### I. INTRODUCTION.

Plaintiff, Martha Dalitzky ("plaintiff" or "Dalitzky") has filed this action against the defendant U.S. Small Business Administration, ("defendant" or "SBA") under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), seeking information with regard to the processing of certain loan transactions. For the reasons set forth below, this court will recommend that defendant's motion for summary judgment be allowed and the plaintiff's denied.

### II. FACTUAL BACKGROUND.

The following facts are undisputed. Plaintiff Dalitzky was a shareholder and personal guarantor of DataPix, Inc., a now defunct corporation.[2] Defendant's L.R.

56.1 at ¶ 2. DataPix was capitalized by a $700,000 loan from Southern National Bank, (the "bank"), eighty-five percent of which was guaranteed by the defendant the SBA.

Shortly after its inception, DataPix experienced financial difficulties and eventually defaulted on its loan.[3] According to the SBA, it was required to purchase the loan from the bank on the secondary market. The SBA was then left to decide whether to honor its guarantee to the bank. Accordingly to the SBA, if Southern National Bank was found to have acted negligently in closing, disbursing, or servicing the loan, the SBA would be excused from performance as guarantor.

After the bank liquidated the assets of DataPix, a deficiency in the amount of approximately $300,000 remained. Although no formal action has been taken, Dalitzky anticipates a lawsuit against her and several other personal guarantors to collect this deficiency. When this occurs, Dalitzky plans to bring an action against the Southern National Bank for its alleged mismanagement of the loan.

Dalitzky claims that the bank disbursed the loan proceeds in violation of the written loan agreement between the bank and the SBA. For example, the terms of the agreement specify the uses for which the loan proceeds could be employed by DataPix. Apparently, the bank's disbursement of the money was not in accordance with the terms of the loan agreement, which required SBA's prior written approval of any changes in use of the loan proceeds. In fact, six months elapsed following the bank's unilateral approval of changes in the use of proceeds before the SBA discovered the banks' action. The SBA then reviewed the bank's decisions and retroactively approved some of the changes.

Plaintiff claims that the SBA failed to notify her of the alteration in the terms of

---

1. This matter has been referred to the court for report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates in the United State District Court for the District of Massachusetts, 28 U.S.C. § 636(b)(1)(B).

2. At oral argument, it was explained to the court that DataPix was an enterprise which stored descriptive materials on a computer disk.

3. The DataPix loan closed in April of 1990, and the company survived no longer than January of 1991.

the agreement and, as a result of the use of proceeds change, DataPix was unable to acquire rights to critical parts of the electronic publishing system, and ultimately collapsed. In other words, as a result of the negligence of the SBA and the bank, plaintiff says she is on the hook for $300,000. She wants to know what went on between the SBA and Southern National.

On March 20, 1992, Dalitzky directed a request for certain documents pursuant to the Freedom of Information Act, to the Charlotte, North Carolina District Office of the United States Small Business Administration. Defendant's L.R. 56.1 at ¶ 1. On April 1, 1992, district counsel replied to Dalitzky's request by producing some documents and providing a description of the documents the agency considered exempt from disclosure. *Id.* at ¶ 3. Following Dalitzky's appeal of the Agency's decision not to release all of the documents, the SBA released several other documents relating to the loan transaction. The dispute over disclosure has been narrowed down to nine documents which the SBA claims are not subject to disclosure.

## III. DISCUSSION.

The FOIA was enacted "to enable the public to have access to government information unnecessarily shielded from public view." *Nadler v. United States Dep't of Justice*, 955 F.2d 1479, 1484 (11th Cir.1992). While the basic policy of the FOIA is in favor of broad disclosure of government information, the FOIA contains nine exemptions to "preserve and protect individuals who would be damaged by disclosure." *Aronson v. I.R.S.*, 767 F.Supp. 378, 381–82 (D.Mass.1991) (quoting *New England Apple Council v. Donovan*, 725 F.2d 139, 141–42 (1st Cir.1984)). The parties and the court agree that the court shall apply a *de novo* standard of review and that the burden is on the SBA to prove that the withheld documents fall within an exemption to the FOIA.

The SBA has submitted an index summarizing the contents of the nine disputed documents and has also provided the court with copies of the documents themselves for an *in camera* inspection. The SBA claims that the information falls within Exemption 5 of the FOIA, based on the "deliberative process" and attorney-client privilege.

Exemption 5 protects from disclosure those documents which are considered "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates "all of the normal civil discovery privileges that the Government enjoys under the relevant statutory and case law." *Nadler*, 955 F.2d at 1490 (citations omitted). *See also United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The SBA argues that the executive privilege and the attorney work-product privilege apply to its decision to withhold the documents at issue. *See Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990).

### A. *Executive Privilege.*

In *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the Supreme Court held that the language in Exemption 5 covers inter-agency documents that would be shielded from ordinary discovery because of the government's executive privilege. This blanket insulates, to some extent, the deliberative or policy making process of an agency. *See Florida House of Representatives v. United States Dep't of Commerce*, 961 F.2d 941, 944 (11th Cir. 1992); *Access Reports v. Department of Justice*, 926 F.2d 1192, 1194 (D.C.Cir.1991). The policy behind the executive privilege is to

assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confus-

ing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *National Sec. Archive v. F.B.I.*, 759 F.Supp. 872, 879–80 (D.D.C.1991) (quoting *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)). Congress designed this privilege to encourage " 'frank discussion of legal and policy issues' within the government." *Public Citizen v. Department of State*, 787 F.Supp. 12, 14 (D.D.C.1992) (citations omitted). Exemption 5 also reflects the policy that "the quality of administrative decision making would be seriously undermined if agencies were forced to operate in a fishbowl." *Wolfe v. Department of HHS*, 839 F.2d 768, 773 (D.C.Cir.1988).

 In order to withhold inter-agency documents under the executive process privilege, the SBA must establish that the documents are (1) pre-decisional, in other words, "prepared in order to assist an agency decisionmaker in arriving at his decision," and (2) deliberative, *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters." *Nadler v. U.S. Dept. of Justice*, 955 F.2d 1479, 1490–91 (11th Cir.1992) (citations omitted). As a general matter, executive privilege does not extend to purely factual matters. *Commonwealth v. United States Dep't of HHS*, 727 F.Supp. 35, 43 (D.Mass.1989).

 Documents found to be both "predecisional" and "deliberative" are protected from disclosure under Exemption 5. "They contribute to 'an ongoing deliberative *process* within an agency', reflecting the 'give-and-take' leading up to a decision." *Public Citizen v. Dept. of State*, 787 F.Supp. 12, 14 (D.D.C.1992) (quoting *Access Reports v. Dept. of Justice*, 926 F.2d 1192, 1195 (D.C.Cir.1991)). Generally, Exemption 5 operates to protect inter-agency communications consisting of "advice, recommendations, and other material reflecting deliber-

ative or policy-making processes, but not purely factual or investigatory reports." *Providence Journal Co. v. United States Dep't of Army*, 781 F.Supp. 878, 884 (D.R.I.1991). The exemption includes, but is not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)).

 The central issue the court must resolve is whether disclosure of the nine documents would "discourage candid discussion with the agency." *Public Citizen*, 787 F.Supp. at 14. The SBA has characterized the withheld and redacted documents as both predecisional and deliberative because they reflect the opinions and rationales of the SBA arising from to the bank's closing, disbursement, and processing of the DataPix loan. These opinions were relevant to the SBA's decision whether to honor the guarantee or to bring an action against the bank for breach of contract.

An *in camera* inspection of these documents reveals that the withheld and redacted materials are part of the SBA's predecisional and deliberative process, and are therefore entitled to executive privilege under Exemption 5 of FOIA. Documents 6, 12, and 17 relate to loan officers' opinions regarding whether the SBA should retroactively approve the bank's decision to allow a change in use of proceeds.[4] *See* Higgins Declaration Exhibit A at 1. For example, Document 17, dated December 21, 1991, is directed to the SBA Legal Department from loan officer Jim Brumfield, and is entitled "Request for Post–Purchase Review." The redacted portion contains the opinion of the loan officer as to the effect of the change in use of the proceeds, and the loan officer's opinion of the bank's servicing of the DataPix loan.

The redacted comments are pre-decisional in that the commentator's opinions were prepared to facilitate the SBA's decision

---

**4.** Alternatively, the SBA argues that document 17 is protected by attorney-client privilege under Exemption 5. Because the court finds the document covered under the executive privilege, this argument need not be addressed.

whether to guarantee the loan agreement or to take action against the bank. The documents are also deliberative in that they reflect the "give-and-take" of the consultive process leading up to the decision to change the "use of proceeds" terms of the agreement. These documents reflect the loan officers' recommendations whether the SBA should approve the change in use of proceeds, and are the loan officer's personal opinions rather than any official policy of the SBA.

■ Similarly Documents U, X, NN, and HHH contain the comments of several SBA officers regarding the status of the bank loan after DataPix had defaulted. The content of these communications relates to possible actions that the SBA might take against the bank for its conduct in processing the loan. A document written to a supervisor recommending a particular course of action is predecisional by nature. *See Nadler v. United States Dep't of Justice*, 955 F.2d at 1491.

Contrary to plaintiff's assertions, these documents do not represent "secret law" of the SBA. Rather, these opinions and recommendations are entwined with the deliberative process by which the SBA determined whether and how to proceed against the bank.

## B. *Work–Product Privilege.*

With respect to Document 19, the SBA asserts that the attorney work-product privilege and the executive privilege bring this document under the protection of Exemption 5. Document 19, withheld in full, is a post-purchase review of the DataPix loan from SBA district counsel Bynum Rudisill to loan specialist Jim Brumfield, reviewing the bank's servicing and processing of the loan.

■ The attorney work-product privilege covers documents that "reveal an at-torney's mental impressions and legal theories and were prepared by the attorney in contemplation of litigation." *Nadler v. United States Dep't of Justice*, 955 F.2d at 1491. The work-product privilege protects documents created after litigation has begun as well as documents that were created in anticipation of litigation. *Id.* This privilege "enables a lawyer to develop his mental impressions and legal theories without the fear of having his adversaries rummage through them at their leisure." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126 (D.C.Cir.1987) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947)).

■ An *in camera* review of Document 19 reveals that this memorandum from the SBA district counsel to the loan officer contains the attorney's mental impressions in completing a post-purchase review of the loan. These documents were prepared in contemplation of future litigation against the bank for its processing of the DataPix loan. Therefore, even if this court were to conclude that the document was not predecisional and deliberative, it is protected under the attorney work-product privilege.

## IV. CONCLUSION.

An *in camera* inspection of the nine documents reveals that the communications are protected from disclosure under Exemption 5 of the FOIA. This court therefore recommends that the plaintiff's motion for summary judgment be DENIED and the defendant's motion for summary judgment be ALLOWED.[5]

---

**5.** The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection thereto with the Clerk of this court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appel-

late review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *United States v. Vega,* 678 F.2d 376, 379 (1st

Cir.1982). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985).

