**NORTH DARTMOUTH PROPERTIES, INC., Plaintiff,**

v.

**THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.**

No. 96–11964–JLT.

United States District Court, D. Massachusetts.

Nov. 6, 1997.

Patricia Randall, Hamilton, Dahmen & Randall, Boston, MA, for Plaintiff.

George B. Henderson, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, North Dartmouth Properties, Inc. ("North Dartmouth"), seeks, through this action, to compel the release of information that it claims has been wrongfully withheld by the United States Department of Housing and Urban Development ("HUD"). Plaintiff brings its claim pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*

## I.

## BACKGROUND

At issue are two documents that HUD has withheld in their entirety. Both documents relate to HUD's decision to use its Special Workout Assistance Team ("SWAT") in conducting an investigation at Wiggins Village, a housing project managed by North Dartmouth Properties.

Fearing that serious allegations of fraud and mismanagement had been alleged, North Dartmouth made its original FOIA request when it learned of the pending investigation. HUD initially opposed the release of all of the requested information. With the court's assistance, however, the parties resolved their differences with respect to all but the two documents at issue here. HUD continues to maintain that these documents are protected by the "deliberative process" privilege.

The first document at issue is an e-mail message dated April 1, 1996 from Michael

Watson, Chief of the Asset Management Division of HUD's Rhode Island State Office, and addressed to Peggy Cockrell, a member of HUD's SWAT team. The second document is an e-mail message dated March 6, 1996, again from Mr. Watson. This message is addressed to Ms. Jovanna Morales, the Multifamily Asset Manager in the Rhode Island State Office directly responsible for HUD's involvement in the Wiggins Village Project. Unredacted copies of both documents were submitted to this Court for *in camera* review.

## II.

### *ANALYSIS*

#### A. *Standard of Review*

█ FOIA cases are often decided on summary judgment. *Struth v. FBI*, 673 F.Supp. 949, 953 (E.D.Wis.1987) (noting that "[s]ummary judgment is commonly used to adjudicate FOIA cases"); *see also, Maynard v. CIA*, 986 F.2d 547 (1st Cir.1993); *Gillin v. I.R.S.*, 980 F.2d 819, 821 (1st Cir.1992). Summary judgment is warranted when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment in a FOIA case may be granted solely on the basis of agency affidavits if they are clear, specific, and reasonably detailed. *Id.; Miller v. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985); *Hemenway v. Hughes*, 601 F.Supp. 1002, 1004 (D.D.C. 1985). In this case, Defendant's *Vaughn* index, Mr. Watson's deposition testimony, and the *in camera* submissions make clear that summary judgment is appropriate.

#### B. *The Deliberative Process Privilege*

█ FOIA requires federal agencies to make available to any person records that are properly requested, subject to certain exemptions. The government bears the burden of demonstrating that its withholding of records is proper under the Act.[1] 5 U.S.C. § 552(a)(4)(B) (1996); *Dep't of Justice v. Landano*, 508 U.S. 165, 171, 113 S.Ct. 2014,

2019, 124 L.Ed.2d 84 (1993). Exemption 5, 5 U.S.C. § 552(b)(5), exempts from disclosure "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* This exemption encompasses documents that would normally be privileged in the civil discovery context, including documents that would typically be protected by the "deliberative process" privilege. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975).

█ A document qualifies for protection under Exemption 5 if it is both "predecisional" and "deliberative." *Providence Journal Co.*, 981 F.2d at 557. In other words, the document (1) must be prepared to assist the agency decision-maker in arriving at his decision and (2) must be a part of the deliberative process in that it makes recommendations or expresses personal opinions on the matter. *Town of Norfolk v. Army Corp. of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992); *Dalitzky v. Small Business Administration*, 144 F.R.D. 8, 12 (D.Mass.1992).

█ The purpose of the "deliberative process" privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151, 95 S.Ct. at 1516. More specifically, courts have consistently advanced three policy rationales for this exemption: (1) it encourages open and frank discussions among agency personnel; (2) it protects against the premature disclosure of an agency's policies before they have been formally adopted; and (3) it prevents against public confusion that might result from the disclosure of reasons and rationales that do not, in fact, form the ultimate basis for the agency's decision. *Providence Journal Co.*, 981 F.2d at 557; *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). Accordingly, the central issue in this case is whether

---

1. The district court's review of an agency's claim of privilege in a FOIA case is *de novo*. 5 U.S.C. § 552(a)(4)(B); *Providence Journal Co. v. Depart-* *ment of the Army*, 981 F.2d 552, 556–57 (1st Cir.1992).

disclosure of these two documents would discourage candid discussion among HUD's employees in the future. This court finds that it would.

### 1. *The April 1, 1996 E–Mail Message*

■ In opposing Defendant's motion, Plaintiff argues that disclosure of the April 1, 1996 e-mail message "would not foreseeably harm HUD's interest in frank discussion among agency employees." Plaintiff's Memorandum, p. 2. Plaintiff points to the fact that Mr. Watson's message was written after the decision was made and concludes that "it simply does not threaten to contradict the policy concerns that necessitated the passage of Exemption 5." Plaintiff's Memorandum, p. 5.

#### a. *The E–Mail Was "Pre–Decisional" In Nature*

Not surprisingly, it has become nearly axiomatic in jurisprudence under the Act that, to assert the "deliberative process" privilege, the document must have actually been written *prior* to the time the decision was made. *See, e.g., Providence Journal Co.,* 981 F.2d at 557; *Town of Norfolk,* 968 F.2d at 1458; *Massachusetts v. Dep't of Health and Human Services,* 727 F.Supp. 35, 43 (D.Mass. 1989). In fact, the Supreme Court wrote, in the leading case on the issue, that "it is difficult to see how the quality of a decision [could] be affected by communications with respect to the decision occurring after the decision is finally reached." *Sears, Roebuck & Co.,* 421 U.S. at 151, 95 S.Ct. at 1516.

The Supreme Court in *Sears, Roebuck & Co.* and the courts in the other cases cited herein were not, however, considering a factual situation like the one presented here. In none of these cases did the court consider a document that was generated after the agency's decision was made, but which nonetheless reiterated the agency's pre-decisional deliberations. In contrast, Mr. Watson's April 1, 1996 e-mail message relates to and essentially re-states discussions that he had held with Vyllorya Evans and Peggy Cockrell during the week preceding HUD's final decision regarding the use of its SWAT team at Wiggins Village. Deposition of Michael Watson, at 19–20.

Moreover, the Supreme Court has recognized that this situation is one in which the disclosure of a post-decisional document might affect the quality of an agency's decision-making process. The Court in *Sears, Roebuck & Co.* suggested that the future quality of an agency's decisions could be affected if "the ingredients of the decision-making process are ... disclosed."[2] *Sears, Roebuck & Co.,* 421 U.S. at 151, 95 S.Ct. at 1516. Clearly, the Court's decision reflects a concern for the chilling effects that such disclosure would have on future agency deliberations. In *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974), the Court aptly noted that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." This observation remains true whether the remarks are made shortly before or just after the agency's decision is announced.

Under the circumstances in this case, where an agency employee reiterated his own recommendations shortly after the decision was made, his comments must be protected to avoid revealing the "ingredients of the decision-making process." *See Sears, Roebuck & Co.,* 421 U.S. at 151, 95 S.Ct. at 1516. More importantly, the "deliberative process" privilege must apply, so that other agency employees will not be deterred from expressing their own opinions in the future. *See Nixon,* 418 U.S. at 705, 94 S.Ct. at 3106. For this reason alone, Mr. Watson's message should be protected as "pre-decisional" in nature.

**2.** The Court of Appeals for the District of Columbia Circuit has reached a similar conclusion. In *Russell v. Dep't of the Air Force,* 682 F.2d at 1048, the court noted that "the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Id.* In denying the Plaintiff access to draft copies of an official history, the court concluded that, "disclosure of the internal workings of the agency is exactly what the law forbids." *Id.* at 1049.

In addition, although Mr. Watson's message to Ms. Cockrell was generated after the agency made its decision, it is at least possible that he did not know of the agency's decision at the time he prepared his comments. There is no dispute that Mr. Watson's e-mail was not a "reply" to Ms. Cockrell's earlier message announcing the decision.[3] Defendant's Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried, ¶ 13 ("Defendant's Statement"). Moreover, all that Plaintiff can point to in asserting that Mr. Watson might have known of the decision is Mr. Watson's admission at his deposition that he does not remember whether he had seen Ms. Cockrell's message before sending his own e-mail. Deposition of Michael Watson, p. 13–14. It seems to defy logic, however, to conclude from this that Mr. Watson knew of the decision. No one would waste time preparing an e-mail message in an attempt to persuade someone to reach a conclusion if he knew that the conclusion he was advocating had already been reached. For these reasons, this Court finds that Mr. Watson's April 1, 1996 e-mail message was "pre-decisional" and, therefore, not subject to disclosure under FOIA.

#### b. *The E–Mail Was Also "Deliberative"*

Because "[a] 'predecisional' document may still not fall within the confines of Exemption 5 if it [was] not part of the 'deliberative' process," *Providence Journal Co.*, 981 F.2d at 559 (citing *Formaldehyde Institute v. Dep't of Health and Human Services*, 889 F.2d 1118, 1121 (D.C.Cir.1989)), this court must also decide whether the April 1, 1996 e-mail message was "deliberative." Contrary to Plaintiff's assertions, "expressions of personal opinion generally render a document 'deliberative.'" *Providence Journal Co.*, 981 F.2d at 559. Courts have routinely held that the exemption covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*

*Gas Corp.*, 617 F.2d at 866; *Dalitzky*, 144 F.R.D. at 12.

In this case, the message simply reflects Mr. Watson's personal views, opinions, and recommendations concerning the need for SWAT involvement at Wiggins Village. Aldrich Declaration, ¶ 15(f). Moreover, the e-mail message expresses nothing more than his subjective beliefs about, and characterizations of, the project's history and, more generally, the political climate in Providence during the relevant period. *Id.* In short, Mr. Watson's first message is "deliberative" as the term has been defined in the relevant caselaw.

In summary, for all the reasons stated above, this court finds that the April 1, 1996 e-mail message is protected from disclosure under the "deliberative process" privilege and, accordingly, ALLOWS Defendant's Motion for Summary Judgment.

#### c. *The Message Did Not Lose Its Protection When the Agency Reached its Decision*

Plaintiff makes an additional argument in opposition to Defendant's Motion for Summary Judgment. Plaintiff contends that, even if the April 1, 1996 message was part of the deliberative process, it should not be withheld, because Mr. Watson's statements "were apparently in accord with the [agency's] decision." Plaintiff's Memorandum, at p. 8–9. Plaintiff's argument seems to be that a document looses its "deliberative process" protection if it is consistent with the agency's ultimate choice. This contention is, however, only partially correct.

■ A "pre-decisional" document can lose its protection, but only if an agency *expressly* chooses to adopt it or incorporates it by reference in announcing its decision. *Sears, Roebuck & Co.*, 421 U.S. at 161, 95 S.Ct. at 1521. Where it is unclear whether a recommendation in fact provides the basis for a final decision, the recommendation should be protected. *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184–85, 95 S.Ct. 1491, 1500–01, 44

---

**3.** As one of its features, e-mail allows the reader of a message to reply to the sender, while viewing the sender's message. A "reply" would, therefore, never be sent without first viewing the original message.

L.Ed.2d 57 (1975); *Ahearn v. U.S. Army Materials and Mechanics Research Center,* 580 F.Supp. 1405, 1407 (D.Mass.1984).

Plaintiff in this case gives the Court no reason to believe that Mr. Watson's reasoning was ultimately adopted by the agency. To the contrary, the record merely indicates that HUD, in the end, reached the same conclusion as Mr. Watson proposed. Plaintiff's claim in no way precludes summary judgment in this case.

### d. *No Segregable Factual Information*

■ Alternatively, Plaintiff requests that this Court order Defendant to release any segregable factual information contained in the message. Plaintiff's Memorandum, p. 9–10. Plaintiff quite correctly notes that the "deliberative process" privilege operates to protect intra-agency communications consisting of "advice, recommendations, and other materials reflecting [the] deliberative or policy-making process[ ], but not purely factual or investigatory reports." *Dalitzky,* 144 F.R.D. at 12; *see also EPA v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); *Coastal States Gas Corp.,* 617 F.2d at 867. Factual information must, therefore, be segregated to the extent possible.[4] *Town of Norfolk,* 968 F.2d at 1458. An *in camera* inspection reveals, however, that there is no factual information in Mr. Watson's first e-mail message that can be segregated, and certainly none that can be released without disclosing the nature of the deliberative process. *See Providence Journal Co.,* 981 F.2d at 562 (holding that "[f]actual material should be considered segregable [only] if it is not so 'inextricably intertwined' with the deliberative material that its disclosure would 'compromise the confidentiality of deliberative information that is entitled to protection' ") (quoting *Mink,* 410 U.S. at 92, 93 S.Ct. at 838). Accordingly, summary judgment for the Defendant is appropriate as to the first e-mail message.

### 2. *The March 6, 1996 E–Mail Message*

■ With regard to the March 6, 1996 e-mail message, Plaintiff again argues that disclosure would not inhibit frank discussion among the agency's employees in the future. Plaintiff's Memorandum, p. 2. Plaintiff suggests that the second document was not part of the "deliberative process," because it "was not addressed or distributed to anyone involved in the deliberative process." *Id.* In short, Plaintiff's argument appears to be that HUD has no interest in protecting the confidentiality of a conversation in which a superior expresses his opinions to a subordinate who is not involved in the decision-making process. This argument ignores, however, the weight of the caselaw.

Courts have consistently stated that the "deliberative process" privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later . . . ridicule or criticism." *Providence Journal Co.,* 981 F.2d at 557; *Dalitzky,* 144 F.R.D. at 11; *Massachusetts v. Dep't of Health and Human Services,* 727 F.Supp. at 43 n. 10. The reverse then must also be true. Conversation is, after all, a two-way street. A superior would be willing to engage a subordinate in candid debate only if he knows that his opinions will also be protected by the "deliberative process" privilege. The goal of Exemption 5 can be achieved in no other way.

There is no room for debate about whether Mr. Watson's March 6, 1996 e-mail message was "pre-decisional." Obviously, the March 6, 1996 e-mail message preceded Ms. Cockrell's message announcing the agency's final decision by nearly a month. Defendant's Statement, ¶¶ 10 and 15. Moreover, Plaintiff's claim that none of the documents produced to date shows that Mr. Watson was involved in the decision-making process fails to raise an issue of material fact as to whether or not the e-mail is "deliberative" in nature. Plaintiff's Memorandum, p. 8. Defendant has affirmatively stated that "Mr. Watson was one of the local Field Office

---

**4.** The government bears the burden of demonstrating that the privilege applies to all portions of the document. *Church of Scientology International v. Dep't of Justice,* 30 F.3d 224, 236–37 (1st Cir.1994).

officials involved in the deliberative process," and Plaintiff has not, by this claim, directly challenged the validity of Defendant's assertion. Defendant's Statement ¶ 11. Furthermore, an *in camera* inspection of the document reveals that it was also addressed to Luisa Osborne, the only person in HUD's Rhode Island Office who could formally request SWAT involvement. In Camera Declaration of Luisa G. Osborne, Exhibit B; Defendant's Statement, ¶ 7. Clearly, Osborne was involved in making the decision. Accordingly, the document falls squarely within the realm of protection afforded by Exemption 5.

In conclusion, this document contains Mr. Watson's subjective recommendations, which were made to his superior in the decision-making process during the Rhode Island Office's consideration of whether or not to seek SWAT assistance. Moreover, the *in camera* inspection reveals that this document contains no segregable factual information and must be protected in its entirety. The Court, therefore, ALLOWS Defendant's Motion for Summary Judgment.

## III.

### *CONCLUSION*

The evidence submitted to this Court reveals no disputed issue of material fact. To the contrary, it demonstrates that both Mr. Watson's April 6, 1996 e-mail message and his earlier March 6, 1996 transmission are protected from disclosure by the "deliberative process" privilege. For all of the foregone reasons, this Court hereby ALLOWS Defendant's Motion for Summary Judgment.